STATE OF NORTH CAROLINA v. CARL STEPHEN MOSELEY

No. 385A92

(Filed 29 July 1994)

1. **Criminal Law § 762 (NCI4th)— instruction on reasonable doubt—use of moral certainty and substantial misgiving—no due process violation**

The trial court's instructions on reasonable doubt which included the terms "moral certainty" and "substantial misgiving" did not reduce the burden of proof for the State to less than proof beyond a reasonable doubt in violation of due process since the court's use of the terms "fully satisfied or entirely convinced" and "abiding faith" in conjunction with "moral certainty" made it clear to the jury that the State's burden was not less than the constitutional standard; the court made it clear that the jurors must consider all the evidence in determining whether they were convinced beyond a reasonable doubt; and the use of the term "substantial misgiving" alone is insufficient to render the instruction unconstitutional.

**Am Jur 2d, Trial § 1385.**

2. **Evidence and Witnesses § 318 (NCI4th)— murder trial— evidence of prior murder by defendant—admissibility to show identity**

Evidence that defendant had murdered a woman in Stokes County three months prior to the murder of a woman in Forsyth County was admissible to show the identity of defendant as the perpetrator of the Forsyth County murder where both victims were last seen alive in the same club in Winston-Salem; the defendant was in the club on each occasion; the body of each victim had similar wounds; a foreign object had been forced into the genitalia of each woman; the signature in each murder was that the murderer had inflicted far more injuries to the victim than was necessary to cause death; and testimony by a DNA expert indicated that the chance that defendant was not the donor of semen found in the Stokes County victim was approximately one in 274 million. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Homicide § 312.**

3. **Criminal Law § 1337 (NCI4th)— capital sentencing—aggravating circumstance—stipulation of convictions of violent crimes— graphic testimony by victim of those crimes**

In a capital sentencing proceeding in which the State relied in part on the aggravating circumstance that defendant had previously been convicted of a felony involving violence to the person and defendant stipulated that he had been convicted of assault with a deadly weapon inflicting serious injury and attempted second-degree rape, the trial court did not err by permitting the victim of those two crimes to give detailed and graphic testimony about the manner in which those crimes were committed. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-Gregg cases. 65 ALR4th 838.**

4. **Evidence and Witnesses § 740 (NCI4th) — mother's identification of autopsy photograph — sympathy and accountability not sought**

Testimony by a murder victim's mother identifying an autopsy photograph of the victim was relevant to establish the victim's identity and did not violate the rule that the jury's decision should be based on the evidence and not on accountability to the victim's family where there was nothing in the record to support defendant's contention that the witness cried while she was testifying, and no questions were asked of the witness seeking sympathy or suggesting the need for accountability.

**Am Jur 2d, Appeal and Error §§ 797-801, 803.**

5. **Criminal Law § 104 (NCI4th) — measurement of knife blade — not test result subject to discovery**

Where a pathologist testified in a murder trial that he simply opened a knife that had belonged to the defendant, looked at the blade, and measured it, this was not the type of test whose results must be given to the defendant pursuant to N.C.G.S. § 15A-903(e), and the pathologist was properly permitted to testify that the knife was consistent with the size and shape of the wounds inflicted upon the victim even though defendant was not informed of any tests on the knife.

**Am Jur 2d, Depositions and Discovery §§ 447-449.**

6. **Evidence and Witnesses § 2210 (NCI4th) — expert testimony — "indications" of blood**

An SBI agent was properly permitted to testify that phenolphthalein testing revealed "indications" of the presence of blood on defendant's boots and clothing but that the quantities were insufficient to determine definitively whether in fact blood was present, and to testify about the transfer of "indications" to clothing through secondary transfer or spattering. This testimony, though not strong, was relevant to show that blood had spattered on the defendant.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

7. **Evidence and Witnesses § 1685 (NCI4th) — slides illustrating testimony — no excessive use**

Two sets of slides used by an expert witness to illustrate his testimony concerning the similarities of wounds suffered

by the victim in this murder trial and another woman murdered by defendant were not unnecessarily repetitive, graphic and misleading where slides of each victim were shown side-by-side; no slide was kept on the screen for an excessive period or unnecessarily repeated; the presentation was made to the jury only on one occasion; and the trial court gave the jury limiting instructions at all appropriate times.

**Am Jur 2d, Evidence § 763.**

8. **Criminal Law § 1344 (NCI4th)— capital sentencing—heinous, atrocious, or cruel aggravating circumstance—sufficiency of evidence for submission**

The trial court in a capital sentencing proceeding properly submitted to the jury the aggravating circumstance that the murder was especially heinous, atrocious, or cruel where the evidence tended to show that the victim was sexually assaulted with a blunt object and was beaten about the head, face, neck, chest, and abdomen; the victim was stabbed twelve times and was tortured by means of two long incisions on her chest and two more across her neck; and the victim was manually strangled. This evidence was sufficient to show that the murder was characterized by excessive brutality, physical pain, psychological suffering and dehumanizing aspects not normally found in a first-degree murder case.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-Gregg cases. 63 ALR4th 478.**

9. **Homicide § 552 (NCI4th)— first-degree murder—submission of second-degree murder not required**

The trial court in a first-degree murder prosecution did not err by failing to submit second-degree murder to the jury where the evidence was sufficient to fully satisfy the State's burden of proving each and every element of first-degree murder, and defendant only offered evidence of alibi and other evidence that he did not commit the offense.

**Am Jur 2d, Homicide §§ 525 et seq.**

**10. Jury § 111 (NCI4th) — capital trial — newspaper article — denial of individual voir dire and sequestration of jurors — no abuse of discretion**

The trial court did not abuse its discretion in the denial of defendant's motion for individual voir dire and sequestration of prospective jurors in a capital trial where the question of individual voir dire arose on the second day of jury selection from juror responses regarding whether they had read a certain newspaper article; the court indicated that it paid careful attention to jurors' responses concerning the article and was satisfied with their unequivocal responses as to their ability to give defendant a fair and impartial trial; and the court informed defendant that it would monitor the situation and, if necessary, would again consider whether individual voir dire of any prospective juror would be appropriate.

**Am Jur 2d, Jury § 197.**

**11. Criminal Law § 78 (NCI4th) — capital trial — newspaper article — denial of change of venue**

The trial court did not err by the denial of defendant's motion for a change of venue of his first-degree murder trial based on a newspaper article detailing the history of the case and quoting a statement by the district attorney that the State would rely on circumstantial evidence and that tied this case to a murder in another county where defendant admitted in open court that he had no evidence that he had been prejudiced by the article but asked the court to reserve ruling on the motion to see if prospective jurors had been tainted by the article, and defendant failed to show anything from the questioning of prospective jurors indicating that any of them were prejudiced by the article.

**Am Jur 2d, Criminal Law § 378.**

**12. Criminal Law § 1373 (NCI4th) — first-degree murder — death sentence not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant where the jury found as aggravating circumstances that (1) defendant had previously been convicted of a felony involving violence to the person, (2) the murder was committed while defendant was engaged in the commis-

sion of first-degree rape or first-degree sexual offense, and (3) the murder was especially heinous, atrocious, or cruel; the evidence showed that defendant offered a ride home to a small, trusting woman but instead took her to a secluded location where he sexually assaulted, tortured, beat, strangled, and stabbed her until she was dead; defendant inflicted far more injuries to the victim than were necessary to cause death; and the murder was thus characterized by brutality and "overkill."

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances — Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Albright (W. Douglas, Jr.), J., at the 14 September 1992 Criminal Session of Superior Court, Forsyth County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 18 November 1993.

The defendant was tried for the first-degree murder of Deborah Jane Henley. The State's evidence showed that the defendant met Ms. Henley at the SRO dance club in Winston-Salem on the evening of 25 July 1991. After the club closed, the defendant offered Ms. Henley a ride to her home. There was testimony that the defendant and Ms. Henley left the club together at approximately 1:30 a.m. and the defendant was next seen at approximately 2:45 a.m.

Ms. Henley's nude body was later found partially concealed in a field approximately five miles from the SRO club. The wounds on Ms. Henley's body revealed that she had been savagely beaten, stabbed, sexually assaulted with a blunt instrument, and manually strangled.

The jury found the defendant guilty of first-degree murder and after a sentencing hearing recommended that he receive the death penalty. This sentence was imposed by the court.

The defendant appealed.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Richard D. Ramsey and Thomas G. Taylor for defendant-appellant.*

WEBB, Justice.

**[1]** The defendant's first assignment of error is to the charge of the court. The court charged on reasonable doubt as follows:

> A reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or the lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.

> Defined another way, a reasonable doubt is not a vain, imaginary, or fanciful doubt; but is a sane, rational doubt. When it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it is meant that they must be fully satisfied or entirely convinced or satisfied to a moral certainty. If after considering and comparing and weighing all the evidence the minds of the jurors are left in such condition that they cannot say they have an abiding faith to a moral certainty in the defendant's guilt, then they have a reasonable doubt. Otherwise, not.

> A reasonable doubt, as that term is employed in the administration of the criminal law, is an honest substantial misgiving generated by the insufficiency of the proof; an insufficiency which fails to convince your judgment and conscience and satisfy your reason as to the guilt of the accused. It is not to [sic] the doubt suggested by the ingenuity of counsel or by your own ingenuity not legitimately warranted by the testimony. Nor is it one borne of merciful inclination or disposition to permit the defendant to escape the penalty of the law. Nor is it one prompted by sympathy for him or those connected with him.

The defendant, relying on *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990) and *State v. Bryant*, 334 N.C. 333, 432 S.E.2d 291 (1993), *cert. granted, judgment vacated, N.C. v. Bryant*, --- U.S. ---, 128 L. Ed. 2d 42 (1994), argues that by using the terms "moral certainty" and "substantial misgiving," the court violated the due process clause of the United States Constitution by reducing the burden of proof for the State to less than beyond a reasonable doubt. In *Cage*, the United States Supreme Court held that the use of the words "grave uncertainty," "actual substantial doubt"

STATE v. MOSELEY

[336 N.C. 710 (1994)]

and "moral certainty" when defining reasonable doubt, created a reasonable likelihood that the jury applied the reasonable doubt standard in an unconstitutional manner by finding the defendant guilty on a degree of proof less than a reasonable doubt. *Cage v. Louisiana,* 498 U.S. 39, 41, 112 L. Ed. 2d 339, 342.

In *Bryant,* we applied *Cage* and awarded a new trial for errors in a charge very similar to the charge in this case. After our decision in *Bryant,* the United States Supreme Court revisited this subject in *Victor v. Nebraska,* 511 U.S. ---, 127 L. Ed. 2d 583 (1994). In that case, although suggesting that the term "moral certainty" not be used in jury instructions, the Court held that its use was not error if the rest of the charge gives meaning to these words and shows that they do not mean the State's burden is lower than beyond a reasonable doubt. In *Victor,* the court had charged the jurors that they must have " 'an abiding conviction, to a moral certainty, of the truth of the charge.' " *Id.* at ---, 127 L. Ed. 2d at 596. The United States Supreme Court said the use of the words "abiding conviction" in conjunction with "moral certainty" made it clear to the jury that "moral certainty" did not have a meaning different from reasonable doubt.

The defendant in *Victor* had also argued that one definition of moral certainty, found in *The American Heritage Dictionary of the English Language* 1173 (3d ed) (1992), is " '[b]ased on strong likelihood or firm conviction, rather than on the actual evidence[.]' " He said that under this definition, the jury could have convicted him on something other than the evidence. The Supreme Court said this danger was allayed because the court had instructed the jury that it must base its verdict on all the evidence.

In this case, the court, in defining reasonable doubt, told the jury it "must be fully satisfied or entirely convinced or satisfied to a moral certainty." It also told the jurors that if "they cannot say they have an abiding faith to a moral certainty in the defendant's guilt, then they have a reasonable doubt." Pursuant to *Victor,* we hold that the use of the terms "fully satisfied or entirely convinced" and "abiding faith" in conjunction with "moral certainty" made it clear to the jury that the State's burden of proof was not less than the constitutional standard.

In addition, the court in this case made it clear that in determining whether they were convinced beyond a reasonable doubt, the jurors must consider all the evidence. Pursuant to *Victor,* there

is not a reasonable likelihood that under this instruction the jury would have understood moral certainty to be disassociated from the evidence in the case.

In *Victor*, the Supreme Court also dealt with the words "substantial doubt." In that case, the court had charged that " '[a] reasonable doubt is an actual and substantial doubt . . . *as distinguished from* a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.' " *Victor v. Nebraska,* 511 U.S. at ---, 127 L. Ed. 2d at 599. The Supreme Court said that in *Cage*, the Court was concerned that the jury would interpret the term "substantial doubt" in parallel with the preceding reference to "grave uncertainty," leading to an overstatement of the doubt necessary to acquit. The Supreme Court said that in *Cage* the reference to substantial doubt alone was not sufficient to render the instruction unconstitutional.

Pursuant to *Victor*, we hold that the use of the term "substantial misgiving" alone does not make the instruction in this case unconstitutional. This assignment of error is overruled.

We note that on remand from the United States Supreme Court, we have today reversed our decision in *Bryant* and held there was no error in the charge in that case.

[2] The defendant next assigns error to the admission of evidence that he had murdered Dorothy W. Johnson on 12 April 1991 in Stokes County. The defendant made a motion to exclude this evidence and a *voir dire* hearing was held out of the presence of the jury.

There was testimony at the hearing that the victim in this case and Ms. Johnson were last seen alive at the SRO club. The defendant was in the club on each occasion. The body of each victim had similar wounds. A foreign object had been forced into the genitalia of each woman. A Special Agent of the Federal Bureau of Investigation testified that the signature to a crime is that behavior which is unnecessary to commit the crime. The signature in both the Stokes and Forsyth murders was overkill. The murderer in each case had inflicted far more injuries to the victim than were necessary to cause death. Michael Budzynski, of the DNA Unit of the State Bureau of Investigation, testified that the chance that the defendant was not the donor of semen found in Ms. Johnson was approximately one in 274 million.

The court found facts consistent with this testimony and ordered that evidence of the Stokes County murder be admitted into evidence.

The defendant contends evidence of the Stokes County murder should have been excluded by N.C.G.S. § 8C-1, Rule 404(b), which provides that evidence of other crimes must be excluded if it is offered only to prove the character of a person to show he acted in conformity therewith. If evidence of other crimes, wrongs, or acts is offered for some purpose other than to show the defendant had the propensity to commit the crime for which he is being tried, it is admissible. *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991); *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990).

The evidence of the Stokes County murder was relevant to prove the defendant committed the murder with which he was charged in this case. There was evidence from which the jury could find that the two murders were committed by the same person. There was also evidence from which the jury could find the defendant committed the murder in Stokes County. If the same person committed both murders, proof that the defendant committed the Stokes County murder is proof he committed the murder for which he was being tried. This is evidence, for its relevance, which does not depend on the proof of the character of the defendant by showing he committed a crime.

The defendant says the evidence of similarity of the two crimes was not sufficient to allow a jury to find they were committed by the same person. He also says the evidence was not sufficient for the jury to find he committed the Stokes County murder. We disagree. When two women are murdered in a similar manner after being abducted from the same club approximately three months apart, a jury could reasonably conclude that the same person killed both of them. Mr. Budzynski's testimony as to the chance that the defendant was the donor of the semen found in Ms. Johnson's body is evidence from which the jury could have found the defendant killed Ms. Johnson.

This assignment of error is overruled.

[3] The defendant next assigns error to the admission of testimony during the sentencing hearing. The State relied in part on the aggravating circumstance that "[t]he defendant had been previously convicted of a felony involving the use or threat of violence to the person." N.C.G.S. § 15A-2000(e)(3) (1988). The defendant stipulated

that he had been convicted of assault with a deadly weapon inflicting serious injury and attempted second-degree rape. The State called as a witness Laura Denise Fletcher, the victim in those two crimes, who testified in some detail as to how they occurred.

The defendant, relying on dicta in *State v. Green*, 321 N.C. 594, 610, 365 S.E.2d 587, 597, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988) and *State v. Silhan*, 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981), argues that it was error to allow the victim of the two crimes to testify after he had stipulated to the convictions. In *Green*, this Court held that it was not error to introduce evidence as to the manner in which the crime was committed after the defendant had stipulated to the commission of the crime. We said that the testimony was not in depth.

The defendant says that in this case the testimony was in great detail and graphic. He says it resulted in a mini-trial for the former crime and was prejudicial to him. The State was entitled to let the jury know what happened and the fact that the evidence was graphic does not make it inadmissible. The defendant concedes we have decided this question contra to his position. *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983).

This assignment of error is overruled.

[4] The defendant next argues four legal questions under one assignment of error. All the arguments deal with the introduction of evidence. The State's first witness was Dorothy Parsley Henley, the mother of the victim. She identified an autopsy photograph of the victim as being an accurate representation of her daughter's body when she saw the body at the hospital. The defendant asserts in his brief, "[a]s may well be imagined, this testimony caused a great deal of consternation to the witness, who was briefly unable to continue and cried throughout the end of her testimony" and that the prejudicial effect of this display and testimony greatly outweighed any probative value.

The defendant contends that the allowance of this testimony violates the language of *State v. Laws*, 325 N.C. 81, 381 S.E.2d 609 (1989), *cert. granted, judg. vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), in which we said:

The jury's determination of guilt or innocence and recommendation as to sentence must be based on the evidence introduced and not . . . accountability to the victim's family.

*Id.* at 106, 381 S.E.2d at 624.

We find nothing in the record to support the defendant's contention that Mrs. Henley cried while she was testifying. The court reporter noted it in other places in the transcript when a witness became emotional. There is no such notation during the testimony of Mrs. Henley. Furthermore, no questions were asked of her seeking sympathy or suggesting a need for accountability. Requesting positive identification of the victim from a family member elicits testimony relevant to establishing the identity of the deceased. No error occurred during Ms. Henley's testimony.

[5] The defendant next contends it was error to allow a pathologist to testify that a knife which had belonged to the defendant was consistent with the size and shape of the wounds inflicted on the victim. The defendant says the State did not inform him of the tests performed on the knife and he was not able to rebut this testimony. The pathologist testified that he did not do any particular tests on the knife, but simply opened it, looked at the blade, and measured it. This was not the type test whose result must be given to the defendant pursuant to N.C.G.S. § 15A-903(e). This testimony had some probative value and it was not error to admit it.

[6] The third witness whose testimony is challenged by the defendant was an agent of the State Bureau of Investigation who testified regarding the presence of blood on the defendant's boots and clothing. The agent testified that phenolphthalein testing revealed indications of the presence of blood, but that the quantities were insufficient to determine definitively whether in fact blood was present. The agent then testified as to "indications" being transferred to the clothing through secondary transfer or spattering.

The defendant says the obvious effect of the testimony as to the "indications" being transferred was that his clothes had been spattered with the victim's blood and this was highly prejudicial. He contends this testimony was more prejudicial than probative and should have been excluded pursuant to N.C.G.S. § 8C-1, Rule 403.

The witness was entitled to testify as to the results of the test. This testimony, although not strong, had some tendency to

STATE v. MOSELEY

[336 N.C. 710 (1994)]

show that blood had spattered on the defendant. It was relevant and properly admissible. *See State v. Prevette,* 317 N.C. 148, 345 S.E.2d 159 (1986).

[7] Finally, under this assignment of error, the defendant argues that Dr. Patrick Lantz, who testified as to the similarity of the wounds of Ms. Henley and Ms. Johnson, used two sets of slides and photographs which were unnecessarily repetitive, graphic and misleading. We note that the defendant did not object to this evidence at the trial and its admission is not reviewable by us under the North Carolina Rules of Appellate Procedure, Rule 10(b)(1). In light of the fact that this is a capital case, we will review this argument.

We have held in numerous cases that photographs may be introduced as evidence "even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *See State v. Hennis,* 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). Each of the victims had received numerous wounds. Dr. Lantz used the slides to illustrate his testimony concerning the similarities between the injuries suffered by the two victims. Slides of each victim were shown side-by-side and no slide was kept on the screen for an excessive period nor were slides unnecessarily repeated. The presentation was made to the jury on one occasion only. At all appropriate times, the court gave the jury limiting instructions. We find no error in the use of the slides.

This assignment of error is overruled.

[8] The defendant next assigns error to the submission to the jury during the sentencing stage of the aggravating circumstance that the murder was especially heinous, atrocious or cruel. N.C.G.S. § 15A-2000(e)(9) (1988). The defendant argues at one point that there was no evidence that the victim was alive when the majority of the injuries were inflicted. When determining the sufficiency of evidence supporting an aggravating circumstance, the evidence must be considered in the light most favorable to the State and with all reasonable inferences to be drawn from the evidence. *State v. Rose,* 335 N.C. 301, 439 S.E.2d 518, *cert. denied,* --- U.S. ---, --- L. Ed. 2d ---, 1994 WL 245495 (1994); *State v. Gibbs,* 335 N.C. 1, 436 S.E.2d 321 (1993), *cert. denied,* --- U.S. ---, 129 L. Ed 2d 883, 1994 WL 112017 (1994); *State v. Quick,*

329 N.C. 1, 405 S.E.2d 179 (1991). Following this rule, we must assume that many of the injuries were received by the victim while she was alive.

The defendant's principal argument under this part of the assignment of error is that the evidence he inflicted the injuries on the victim or killed her was too weak to support finding this aggravating circumstance. The defendant does not challenge the sufficiency of the evidence to support the guilty verdict. The same evidence supports the finding of this aggravating circumstance.

The evidence in this case showed that Deborah Henley was sexually assaulted with a blunt object, was beaten about the head, face, neck, chest, and abdomen. It showed she was stabbed twelve times and was tortured by means of two long incisions on her chest and two more across her neck. She was manually strangled. This evidence shows the murder in this case was characterized by excessive brutality, physical pain, psychological suffering and dehumanizing aspects not normally found in a first-degree murder case. *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E.2d 783, 786 (1983). This aggravating circumstance was properly submitted to the jury. This assignment of error is overruled.

[9] The defendant next assigns error to the failure of the court to submit second-degree murder to the jury. We have held that if the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of first-degree murder and there is no evidence to negate these elements other than the defendant's denial that he committed the offense, second-degree murder should not be submitted to the jury. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983).

The defendant offered some evidence of alibi and other evidence that he did not commit the offense. This is simply a denial that he committed the offense. This was not sufficient to submit the charge of second-degree murder to the jury. This assignment of error is overruled.

The defendant next contends it was error for the court not to strike the death penalty from consideration by the jury and impose a sentence of life in prison. He bases this argument on what he contends was error in admitting the testimony of Laura Denise Fletcher as to the assault by the defendant on her. He says this makes the sentence imposed arbitrary and capricious.

We have held it was not error to admit this testimony. This assignment of error is overruled.

[10] The defendant next assigns error to the denial of his motion to sequester the jury and to allow him to question each juror individually. He acknowledges that this is a matter within the discretion of the court. *See State v. Murphy*, 321 N.C. 738, 365 S.E.2d 615 (1988); *State v. Weeks*, 322 N.C. 152, 369 S.E.2d 895 (1988). The defendant contends the court's failure to permit individual *voir dire* was an abuse of discretion because it: (1) inhibited the jurors' candor; (2) permitted prospective jurors to formulate responses enabling them to be excused from the panel; and (3) educated prospective jurors enabling them to form responses which would enable them to conceal preconceived determinations regarding guilt or innocence. We note this danger is present in every case in which sequestration and individual *voir dire* is not allowed.

The question of individual *voir dire* arose on the second day of jury selection and grew from juror responses regarding whether they had read an article published in the *Winston-Salem Journal* the day before jury selection commenced. The court said questioning of prospective jurors on the content of the article would be inappropriate "[w]hether we be proceeding by collective *voir dire* or by individual *voir dire*." The court indicated that it had paid careful attention to prospective jurors' responses concerning the article and was satisfied with their unequivocal responses as to their ability to give the defendant a fair and impartial trial. The court informed the defendant that it would monitor the situation, and if for some reason it became apparent that some further inquiry would be appropriate with any of the prospective jurors, the court would consider whether that juror should be individually questioned. We cannot say the court abused its discretion in denying the sequestration and individual *voir dire* of the jurors. *State v. Reeb*, 331 N.C. 159, 415 S.E.2d 362 (1992); *State v. Crandell*, 322 N.C. 487, 369 S.E.2d 579 (1988). This assignment of error is overruled.

[11] The defendant under his last assignment of error contends that it was error not to grant his motion for a change of venue. The defendant based this motion on an article that appeared in the *Winston-Salem Journal* on the day preceding the trial. The article detailed the history of the case and quoted the district attorney who admitted the State would rely on circumstantial evidence, but tied this case to the Stokes County case. The defend-

ant admitted in open court that he had no evidence which would show he had been prejudiced by the news article but suggested to the court that it reserve ruling on the motion and see if the prospective jurors had been so tainted by the news article that he could not receive a fair trial.

The court denied the motion. The defendant has not shown anything from the questioning of prospective jurors which would indicate any of them were prejudiced by the news article. *See State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *cert. granted, judgment vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990); *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987). This assignment of error is overruled.

## PROPORTIONALITY REVIEW

In reviewing the sentence, as we are required to do by N.C.G.S. § 15A-2000(d), *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983); *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987), we hold that the aggravating circumstances were supported by the record and that the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

[12] Our final task is to determine whether the sentence was excessive or disproportionate to the penalty imposed in other first-degree murder cases. We hold that the sentence was not excessive or disproportionate.

In determining proportionality, we are impressed with the brutality and "overkill" evidenced in this murder. The defendant offered assistance to a small, trusting woman, took her to a secluded location, where he sexually assaulted her, tortured her, and beat, strangled, and stabbed her until she was dead.

The jury found as aggravating circumstances that: (1) the defendant had been previously convicted of a felony involving the use or threat of violence to the person; (2) the capital felony was committed while the defendant was engaged in the commission of first-degree rape or first-degree sex offense; and (3) the capital felony was especially heinous, atrocious, or cruel.

Eight mitigating circumstances were submitted to the jury. They were: (1) the age of the defendant at the time of this murder;

(2) the defendant was considerate and loving to his mother, father, and sister; (3) the defendant was a loving father to his son; (4) the defendant had been a productive member of society, having sought education and consistently been gainfully and responsibly employed; (5) the defendant sought to exert a good religious influence on the life of his son; (6) the defendant was cooperative with the police in not resisting arrest and voluntarily agreeing to and assisting in the search of his bedroom at his parents' house; (7) the offense was out of character for the defendant; and (8) any other circumstance arising from the evidence which the jury deems to have mitigating value. Of these eight circumstances, one or more jurors found mitigating value only in the defendant's not resisting arrest and assisting officers in the search of his bedroom.

We have reviewed the pool of capitally tried cases and have found ten cases in which the jury found the three aggravating circumstances found in the instant case. Of those ten, four have been remanded for either a new trial or a new sentencing hearing. The remaining six cases include five life sentences and one death sentence. However, the five cases in which a life sentence was imposed are distinguishable.

In *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986), the victim was a fifty-year-old male who was shot once in the back. The evidence tended to indicate that the defendant had offered the victim a ride from a bar to pick up the victim's car. They stopped by a house to have another beer. The defendant then shot the victim, robbed him, and dumped him along the side of a dirt road. The victim was found a short time later and taken to a hospital. He died several days later of pneumonia related to paralysis suffered as a result of the gunshot wound. At trial, the jury found the same three aggravating circumstances as were found in the instant case. However, the jury also found several mitigating circumstances including the statutory mitigating circumstances that the defendant's capacity to appreciate the criminality of his conduct was impaired and that the crime was committed while the defendant was mentally or emotionally disturbed.

In *State v. Bare*, 309 N.C. 122, 305 S.E.2d 513 (1983), the defendant was one of a group of men who took the victim out into the woods where the defendant was twice thrown down a mine shaft. The first time, the victim dropped only a few feet, so the defendant and others helped him back out and then threw

**STATE v. MOSELEY**

[336 N.C. 710 (1994)]

him down again. According to eyewitness testimony, the second drop carried the victim out of sight down the shaft. Two rocks approximately eight inches across were also dropped down the shaft to make sure the victim had dropped to the bottom. The defendant was found guilty of first-degree murder and the same aggravating circumstances as were found in the case *sub judice* were found to be present in *Bare*. The jury deadlocked on the issue of whether the aggravating circumstances found were "sufficiently substantial to call for the imposition of the death penalty." *Id.* at 126, 305 S.E.2d at 516. For this reason, the jury never reached the mitigating circumstances. The motive in *Bare* was revenge. The individuals involved had a business relationship indicative of organized crime activities.

In *State v. Hill*, 308 N.C. 382, 302 S.E.2d 202 (1983), the defendant was part of a gang which set out to rob Good Samaritans. A female member of the group was to feign car trouble. Once a passing motorist stopped to assist her, the defendant and another male would step from the woods, armed with guns, and hold up the motorist. The defendant was armed with a shotgun and his cohort had a .38 pistol. The group staged one robbery and locked the victim in the trunk of his car. The group changed locations and repeated the scenario. A vehicle with three males in it stopped. When one of the occupants tried to flee, he was chased down by two members of the gang, while the defendant stood guard on the other two victims. At some point the defendant hit one victim with his shotgun, breaking the shotgun and opening a ten-stitch gash on the victim's head. The defendant then took the .38 pistol. The defendant ordered two of the victims into the trunk of the victims' car. The third victim was ordered to drive the car in which the defendant was a passenger, while the other members of the gang followed in the defendant's car. The two cars were driven to a nearby barn. There, the defendant shot and killed the driver of the vehicle and fired two additional shots into the trunk of the car. The jury in this case found four aggravating circumstances, the three found in the case at bar, plus that the capital felony was committed by means of a weapon or device hazardous to the public. The jury also found two statutory mitigating circumstances to be present, the catch-all and that the murder was committed while the defendant was mentally or emotionally disturbed. This case can be distinguished in that the defendant in the instant case was not found to be emotionally or mentally disturbed.

In *State v. Darden*, 323 N.C. 356, 372 S.E.2d 539 (1988), the defendant entered a store and stabbed an employee resulting in that employee's death. The defendant then robbed the store of several hundred dollars in cash and coins. In deciding the case, the jury in *Darden* found the three aggravating circumstances found in the instant case, as well as finding that the act was committed for pecuniary gain. The jury found no statutory mitigating circumstances, but did find several non-statutory circumstances. The defendant was found guilty of first-degree murder under both the felony murder theory and on the basis of premeditation and deliberation.

In *State v. Erlewine*, 328 N.C. 626, 403 S.E.2d 280 (1991), the defendant told several people that he planned to rob a local cocaine dealer. After injecting cocaine with some friends one evening, the defendant suggested that he knew where they could get more drugs and money. The three obtained a sawed-off double-barreled shotgun along with another shotgun. They then went to the victim's trailer and talked their way inside. Once inside, the defendant and the victim argued over money the defendant owed the victim. Brandishing their weapons, the defendant and his friend obtained cocaine, marijuana and cash from the victim and a female in the trailer. The victim and the female were then forced to lie down on the bed. The victim's hands were bound. The female was then shot in the hand and face by the defendant's cohort. The victim attempted to stand up at which point the defendant shot the victim in the face. The victim was dead at the scene. The female called authorities though she was seriously wounded. The jury convicted the defendant of first-degree murder on the basis of both premeditation and deliberation and felony murder. The jury found five aggravating circumstances to be present, the three found in the instant case, plus that the murder was committed for pecuniary gain and that the crime was part of a course of conduct including other violent crimes. The jury found two statutory mitigating circumstances, that the crime was committed while the defendant was mentally or emotionally disturbed and the defendant acted under duress or the domination of another. The jury also found two non-statutory mitigating circumstances involving the defendant's drug abuse and his having been adopted.

While these cases are all similar in that the same aggravating circumstances were found to be present, they are distinguishable inasmuch as the cause of death and the surrounding facts may be seen

to be much less egregious. None of the cases cited above show the level of overkill or the indicia of torture found in the instant case.

We believe the instant case to be much more like *State v. Brown*, 315 N.C. 40, 337 S.E.2d 808 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986). In *Brown*, the victim was a convenience store clerk who was abducted from the store, taken to a remote logging path and shot six times while lying face down on the ground. The medical examiner determined that the victim slowly bled to death over approximately fifteen minutes. The victim would have retained consciousness until shortly before her death. There were a series of three and one-half inch long scratches on the victim's left forearm. The jury found the same three aggravating circumstances and none of the submitted mitigating circumstances. The jury recommended a death sentence.

More recently, this Court upheld the death penalty in *State v. Rose*, 335 N.C. 301, 439 S.E.2d 578. In *Rose*, the victim died as the result of blunt force trauma and sharp trauma to the head, as well as manual strangulation. There was evidence of several incised wounds on the victim's body inflicted prior to death. The body was burned at some point after death. Here, the jury found two aggravating circumstances, that the defendant had been previously convicted of a felony involving the use or threat of violence to the person and that the murder was especially heinous, atrocious, or cruel. The jury did not find any of the statutory mitigating circumstances submitted, but did find all nine of the non-statutory mitigating circumstances. The jury recommended the death sentence and we upheld that decision.

In both *Brown* and *Rose*, the facts indicate that the female victim was alone and vulnerable. In both cases, there was evidence indicating the victim survived the initial wounds, remained conscious for a period of time prior to death and that the wounds were painful. Further, there is no indication that the defendant in this case suffered any mental or emotional disturbance which would mitigate his actions. There was no evidence of privation or abuse of a type which has been found to mitigate a defendant's actions.

We are confident that the death penalty is not an aberration in this state for a murder such as this one. The defendant's sentence was not disproportionate.

NO ERROR.