STATE OF NORTH CAROLINA v. HENRY JEROME WHITE

No. COA98-97

(Filed 29 December 1998)

### 1. Jury— individual voir dire and sequestration—denied

The trial court did not abuse its discretion in a first-degree murder prosecution by denying defendant's motion for individual voir dire and sequestration of prospective jurors where defendant contended that individual voir dire was necessary to prevent prospective jurors from giving dishonest answers to sensitive and potentially embarrassing questions concerning racial prejudices. Lack of candor is a danger that is present in every case and the trial court here stated that it would reconsider the matter if defendant believed that collective voir dire was inhibiting jurors' candor as jury selection proceeded.

STATE v. WHITE

[131 N.C. App. 734 (1998)]

**2. Jury— peremptory challenges—racial basis**

There was no clear error in a first-degree murder prosecution in the trial court failing to find intentional discrimination in the prosecutor's exercise of peremptory strikes where the prosecutor's articulated bases for challenging two of the prospective jurors were supported by the record and were factually valid, and, although it was apparent from the prosecutor's statements that race was a predominant factor in his decision to strike two other prospective jurors, defense counsel failed to raise the issue of pretext and there were additional reasons given by the prosecutor. The Court of Appeals was bound by the tremendous deference accorded to the trial court's determination regarding racial neutrality and purposeful discrimination.

**3. Accomplices and Accessories— accessory before the fact to capital murder—instruction denied—no error**

The trial court did not err in a first-degree murder prosecution by declining to instruct the jury on the offense of accessory before the fact to capital murder where, even if the jury believed defendant's testimony, it would have had to find that defendant was at least constructively present. If a defendant is constructively present when the crime is committed, he cannot be convicted as an accessory before the fact.

**4. Evidence— hearsay—prior statement by defendant—admissible**

The trial court did not err in a first-degree murder prosecution by admitting defendant's statement that "he was going to have to cap someone" if his employer did not stop garnishing his wages. If anything, this was a hearsay statement admissible under N.C.G.S. § 8C-1, Rule 801(b) as an admission or statement of a party opponent.

**5. Evidence— hearsay—defendant's statement—admission of party opponent—evidence of motive**

The trial court did not err in a first-degree murder prosecution by admitting defendant's statement that he sold drugs to make ends meet or by instructing the jury that it could consider this evidence for the purpose of finding motive. The statement constituted a statement by a party opponent admissible under N.C.G.S. § 8C-1, Rule 801(d) and the testimony that defendant was in such dire need of money that he sold drugs tended to make

it more probable that his need for money motivated him to rob and kill this victim.

Appeal by defendant from judgment entered 18 April 1997 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 21 October 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Robert K. Leonard and Teresa L. Hier for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Henry Jerome White was convicted of murder in the first degree and was sentenced to a term of life imprisonment during the 18 April 1997 Criminal Session of Forsyth County Superior Court. Defendant appeals his conviction and requests a new trial on the ground that the trial court erred in declining his motion for sequestration and individual *voir dire* of the jurors. Defendant further contends that the court erred in failing to find that the State exercised its peremptory challenges in a manner violating the Equal Protection Clause. For the reasons hereinafter stated, we find no error at trial.

The State presented evidence tending to show that on the morning of 17 February 1996, the body of Carl Marshburn was found lying on the floor of an Earl Schieb Paint and Body Shop ("the paint shop") in Winston-Salem, North Carolina. Marshburn, an employee of the paint shop, had been shot twice during an apparent robbery.

On the previous evening, defendant and his cousin, Harry Beaufort, drove from Greensboro to the paint shop to pick up Beaufort's paycheck. Beaufort testified that when he and defendant arrived at the paint shop, he waited in the car while defendant went inside to get the check from Marshburn. Beaufort stated that while he was waiting, he heard two gunshots fired inside the paint shop. He further stated that during the drive back to Greensboro, defendant admitted that he had shot Marshburn and had stolen a "couple hundred dollars" from his shirt pocket.

Defendant's version of the incident was quite different. He testified that before leaving work on 16 February 1996, he gave Beaufort a 9 mm handgun for safekeeping. According to defendant, Beaufort still had the gun in his possession when they arrived at the paint shop later that evening. Defendant claimed that he stopped at a

nearby gas station and let Beaufort out of the car before he proceeded to the paint shop to collect Beaufort's check. Defendant stated that after receiving the check, he left Marshburn in the paint shop alone and unharmed. Then, he drove to a nearby parking lot and waited for Beaufort to return to the car. When Beaufort returned, he told defendant that he had shot and robbed Marshburn, and on the way back to Greensboro, Beaufort gave defendant some of the stolen money. Defendant maintained that although he knew Beaufort intended to rob Marshburn, he did not know that Beaufort was going to kill him.

After considering all of the evidence, the jury found defendant guilty of first-degree murder and recommended a sentence of life imprisonment. From the trial court's judgment sentencing defendant to life in prison without parole, defendant appeals.

[1] Defendant's first assignment of error on appeal is that the trial court improperly denied his motion for individual *voir dire* and sequestration of the prospective jurors. Section 15A-1214(j) of the North Carolina General Statutes provides that "[i]n capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State." N.C. Gen. Stat. § 15A-1214(j) (1997). The statute further provides that "[t]hese jurors may be sequestered before and after selection." *Id.* Whether to permit sequestration and individual examination of prospective jurors in a capital case is a matter addressed to the sound discretion of the trial court. *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This Court will not disturb the trial court's exercise of that discretion, absent a showing that such discretion was clearly abused. *Id.*

Defendant contends that in the present case, individual *voir dire* was necessary to prevent the prospective jurors from giving dishonest answers to sensitive and potentially embarrassing questions exploring their racial prejudices or biases. However, as our Supreme Court has observed, lack of candor is a "danger [that] is present in every case in which sequestration and individual *voir dire* is not allowed." *State v. Moseley*, 336 N.C. 710, 724, 445 S.E.2d 906, 914 (1994). Furthermore, after denying defendant's motion, the trial court stated that as jury selection proceeded, should defendant believe that collective *void dire* was inhibiting the jurors' candor, defendant could renew his motion, and the trial court would reconsider the matter. Therefore, we hold that the trial court did not abuse

its discretion in denying defendant's motion, and this assignment of error is overruled.

[2] Defendant next contends that the trial court erred in failing to find that the prosecutor exercised four of its peremptory challenges to exclude African-American jurors based solely upon their race, in violation of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the use of peremptory challenges as a means to strike jurors from the venire because of their race. *Id.* Article I, Section 26 of the North Carolina Constitution likewise forbids the use of peremptory strikes for racially discriminatory purposes. *State v. Locklear*, 349 N.C. 118, 505 S.E.2d 277 (1998). In *Batson*, the United States Supreme Court outlined a three-step process for determining whether the State has impermissibly exercised its peremptory challenges to remove prospective jurors by reason of their race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88. First, the defendant must make out a prima facie case of purposeful discrimination in the State's use of peremptory strikes. *State v. Cofield*, 129 N.C. App. 268, 276, 498 S.E.2d 823, 828 (1998). Second, once the requisite showing has been made, the burden shifts to the State to come forward with race-neutral reasons for exercising the challenges. *Id.* at 277, 498 S.E.2d at 828. Finally, if the State successfully rebuts the defendant's prima facie case with race-neutral explanations, the defendant may offer evidence showing that the explanations are merely pretextual. *State v. Bonnett*, 348 N.C. 417, 433, 502 S.E.2d 563, 575 (1998), *petition for cert. filed*, —— U.S.L.W. —— (U.S. Nov. 23, 1998) (No. 98-6972).

The State's explanation for using the peremptory strike in question "must be clear, reasonably specific, and related to the particular case to be tried." *Locklear*, 349 N.C. at ——, 505 S.E.2d at 288. Still, it " 'need not rise to the level justifying exercise of a challenge for cause,' " *State v. Robinson*, 336 N.C. 78, 93, 443 S.E.2d 306, 312 (1994) (quoting *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88). Whether an explanation is, indeed, neutral depends upon whether, accepting the proffered reason as true, the challenge constitutes purposeful discrimination as a matter of law. *Hernandez v. New York*, 500 U.S. 352, 114 L. Ed. 2d 395 (1991). The issue for the trial court is the facial validity of the stated reason, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* at 360, 114 L. Ed. 2d at 406. The trial court's findings on the issue of discriminatory intent are accorded great def-

erence, because the findings " 'largely turn on evaluation of credibility.' " *State v. Thomas*, 329 N.C. 423, 432, 407 S.E.2d 141, 147-48 (1991) (quoting *Hernandez*, 500 U.S. at 365, 114 L. Ed. 2d at 409). Thus, an appellate court will uphold the trial court's findings as to intentional discrimination, unless the " 'reviewing court on the entire evidence [is] left with the definite and firm conviction that a mistake ha[s] been committed.' " *Hernandez*, 500 U.S. at 369, 114 L. Ed. 2d at 412 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766 (1948)).

Where, as in the instant case, the prosecutor defended his use of the peremptory strikes defendant challenges on appeal, the issue of whether defendant met his initial burden of establishing discrimination is moot, and we may proceed with our analysis as though a prima face case of discrimination had been made. *State v. Harden*, 344 N.C. 542, 557, 476 S.E.2d 658, 665 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 483 (1997). Defendant contends that the prosecutor's purported reasons for challenging four African-American jurors— Roderick Conrad, Caryl Reynolds, Sonya Jeter, and Brenda Gwyn— were pretexts and that the trial court committed reversible error in failing to rule accordingly.

The prosecutor stated that his reasons for excusing Roderick Conrad were his criminal record, body language, failure to make eye contact, and lack of candor. With respect to Brenda Gwyn, the prosecutor explained that he challenged her because she appeared confused and addled, she did not believe that being beaten by her husband was a serious crime, she had an uncle who was incarcerated for a serious assault, and she failed to fill out all three questionaire forms as instructed. The prosecutor's articulated bases for challenging Conrad and Gwyn were supported by the record and were facially valid. Because defendant failed to show that the reasons were pretextual, we uphold the court's decision accepting the peremptory challenges in question.

The prosecutor gave the following reasons for striking Sonya Jeter and Caryl Reynolds from the jury pool:

> Both black females, both 27 years old, old enough. Almost the same age as the defendant. Sonya was personally opposed to the death penalty. Carolyn [sic] Reynolds is living with her mother, doesn't have a stake in the community. She's single, has an illegitimate child, health care provider. State thinks that people who want to save lives don't want to take lives. And she didn't think

having her purse stolen was a serious crime. . . . And judge, on Miss Jeter, her cousin was convicted by Detective Rowe. Again, she's another health care provider.

While race was certainly a factor in the prosecutor's reasons for challenging Reynolds and Jeter, our courts, in applying the *Batson* decision, have required more to establish an equal protection violation, i.e., that the challenge be based *solely* upon race. *See e.g.*, *Locklear*, 349 N.C. at ——, 505 S.E.2d at 287 (noting that the United States and North Carolina constitutions "prohibit[] the exercise of peremptory strikes *solely* on the basis of race") (emphasis added); *Cofield*, 129 N.C. App. at 276, 498 S.E.2d at 829 (stating that to establish prima facie case of racial discrimination, defendant must show that circumstances raise inference that State "used peremptory challenges to remove potential jurors *solely* because of their race") (emphasis added); *State v. Quick*, 341 N.C. 141, 143, 462 S.E.2d 186, 188 (1995) (stating that *Batson* holding "prohibits prosecutors from peremptorily challenging jurors *solely* on the basis of race") (emphasis added).

Given the overt reference to race in the prosecutor's purported explanation, we are confounded by defense counsel's failure to challenge the explanation as pretextual. From the prosecutor's statements, it is apparent that race was a predominant factor in his decision to strike Jeter and Reynolds from the venire. It could be argued that the most telling evidence of the prosecutor's intent is the fact that the first words from his mouth as he addressed his reasons for striking Jeter and Reynolds was "[b]oth black females," not "both health care providers" or "both 27 years of age." The explanation, on its face, belies racial neutrality and manifests an intent to exclude these individual jurors based upon their membership in a distinct class. Defense counsel's failure to raise the issue of pretext, however, has stymied our inquiry, and we are left with the narrow question of whether the trial court was patently wrong in finding that the prosecutor articulated a legitimate basis for striking the jurors.

In addressing this question, we are bound by the tremendous deference accorded the trial court's determination regarding racial neutrality and purposeful discrimination. Indeed, "[b]ecause the trial court is in the best position to assess the prosecutor's credibility," a reviewing court will not overturn the trial court's finding as to intentional discrimination absent manifest error. *State v. Cummings*, 346 N.C. 291, 309, 488 S.E.2d 550, 561 (1997), *cert. denied*, —— U.S. —— , 139 L. Ed. 2d 873 (1998). Given the additional statements by the pros-

ecutor that Jeter "was personally opposed to the death penalty" and that Reynolds had a "cousin [who] was convicted by [a detective expected to give testimony in the case]," we cannot conclude that the trial court clearly erred in failing to find intentional discrimination in the prosecutor's exercise of peremptory strikes. Therefore, defendant's assignment of error must fail.

**[3]** By his next assignment of error, defendant contends that the trial court erred in denying his request for an instruction on the charge of accessory before the fact to capital murder. The relevant statute provides as follows:

> All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony. However, if a person who heretofore would have been guilty and punishable as an accessory before the fact is convicted of a capital felony, and the jury finds that his conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime, he shall be guilty of a Class B2 felony.

N.C. Gen. Stat. § 14-5.2 (Cum. Supp. 1997). Defendant contends that there was evidence from which a jury could find that he was an accessory before the fact to the murder of Marshburn and that the evidence against him consisted only of the uncorroborated testimony of Harry Beaufort, whom defendant alleges was the principal in this case. We cannot agree.

Our Supreme Court articulated the following definition of an accessory before the fact:

> "An accessory before the fact is one who is absent from the scene when the crime was committed but who participated in the planning or contemplation of the crime in such a way as to 'counsel, procure, or command' the principal(s) to commit it. Thus, the primary distinction between a principal in the second degree and an accessory before the fact is that the latter was not actually or constructively present when the crime was in fact committed.

*State v. Willis*, 332 N.C. 151, 176-77, 420 S.E.2d 158, 170 (1992) (quoting *State v. Small*, 301 N.C. 407, 413, 272 S.E.2d 128, 132 (1980)). Since accessory before the fact to first-degree murder is a lesser included offense, the trial court must instruct on accessory before the

fact if there is evidence establishing its commission. *Id.* However, "[i]f all the evidence shows the commission of the greater offense, the court should not charge on the lesser included offense simply because the jury might not believe some of the evidence." *Id.* at 176-77, 420 S.E.2d at 170.

Defendant argues that according to his testimony, he was not present in the paint shop when Beaufort murdered Marshburn; therefore, the trial court was required to submit the instruction of accessory before the fact to first-degree murder. However, if a defendant is constructively present when the crime is committed, he cannot be convicted as an accessory before the fact, and an instruction on that offense would be erroneous. *State v. Maynard*, 65 N.C. App. 612, 309 S.E.2d 581 (1983). "Constructive presence occurs when the defendant accompanies the actual perpetrator to the vicinity of the crime and stays there with the purpose of aiding the actual perpetrator, if needed, in committing the offense or escaping thereafter." *Id.* at 613, 309 S.E.2d at 582.

In the present case, defendant testified that when he and Beaufort arrived in Winston-Salem, he stopped at a gas station near the paint shop and let Beaufort out of the car before proceeding to the paint shop to pick up Beaufort's check. Then, he drove to a nearby parking lot and waited for Beaufort to return to the car. When Beaufort returned, he told defendant that he had shot and robbed Marshburn, and he gave defendant half of the stolen money. Defendant stated that he knew Beaufort was going to rob Marshburn, but he had no knowledge of Beaufort's plan to kill him. Even if the jury believed defendant's testimony, it would have to find that he was at least constructively present, because he "accompanie[d] the actual perpetrator to the vicinity of the crime and stay[ed] there with the purpose of aiding the actual perpetrator, if needed, in . . . escaping thereafter." *Id.* We, therefore, hold that the trial court did not err in declining to instruct the jury on the offense of accessory before the fact to capital murder, and defendant's assignment of error fails.

Defendant's final argument is that the trial court erred in permitting Terry Oliver to testify regarding statements made by defendant "tending to show 'prior bad acts' and 'extrinsic conduct.'" The first statement at issue is one made by defendant to Oliver, wherein defendant explained that he had to sell drugs in order to "stay afloat" and to meet his financial obligations. The second statement is one that Oliver overheard while defendant was on the telephone. Oliver

testified that defendant told the other party that "if Earl Scheib didn't quit f\*\*\*ing him around on his money, . . . he was going to have to cap someone." Defendant objected to both of these statements under Rules 404 and 403 of the North Carolina Rules of Evidence.

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C.R. Evid. 404(b). The rule further provides that such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* Under Rule 403, evidence which is determined to be relevant and admissible may, nonetheless, be excluded if its probative value is outweighed by the danger of unfair prejudice. N.C.R. Evid. 403. Whether to exclude evidence under Rule 403 is within the trial court's discretion, and the court's ruling in this respect will not be disturbed absent a showing that the ruling was arbitrary or manifestly unsupported by reason. *State v. Atkins*, 349 N.C. 62, 505 S.E.2d 97 (1998).

**[4]** First, we note that defendant's statement that "he was going to have to cap someone" if Scheib did not stop garnishing his wages does not constitute a prior bad act under Rule 404. If anything, it is a hearsay statement offered to prove the truth of the matter asserted. Nevertheless, this statement would be admissible under recognized exceptions to the general rule prohibiting the admission of hearsay testimony. Defendant's statement that "he was going to have to cap someone" was admissible under Rule 801(d) of the North Carolina Rules of Evidence as an admission or statement of a party opponent. N.C.R. Evid. 801(d); *see also State v. Workman*, 344 N.C. 482, 503, 476 S.E.2d 301, 312 (1996) (concluding that defendant's statement that "we'll just have to rob somebody" properly admitted under Rule 801(d) as statement by party opponent). Under Rule 801(d), a hearsay statement is admissible " 'if it is offered against a party and it is . . . his own statement.' " *Id.* (quoting N.C.R. Evid. 801(d)). The challenged statement meets these requirements; therefore, the trial court did not err in admitting this statement into evidence.

**[5]** With respect to defendant's statement that he sold drugs to make ends meet, we hold, based upon the preceding discussion, that this too constitutes a statement by a party opponent, which is admissible under Rule 801(d). Still, defendant argues that this evidence does not establish a motive for the crime charged and, thus, the trial court

**ESTRIDGE v. HOUSECALLS HEALTHCARE GRP., INC.**

[131 N.C. App. 744 (1998)]

erred in instructing the jury that they could consider this evidence for the limited purpose of finding motive. Again, we must disagree.

The State's evidence tended to show that before the robbery and murder of Marshburn, defendant was experiencing significant financial problems due to the fact that Schieb was garnishing his pay to compensate for a prior shortage. Under Rule 401 of the Rules of Evidence, relevant evidence is that which has any tendency to prove the existence of a material fact. N.C.R. Evid. 401. Oliver's testimony that defendant was in such dire need of money that he sold drugs tended to make it more probable that defendant's need for money motivated him to rob and kill Marshburn. Furthermore, we reject defendant's argument that the trial court abused its discretion in admitting the evidence, as we find no gross improprieties in the trial court's determination that the probative value of the evidence outweighed its prejudicial nature. Therefore, defendant's assignment of error is overruled.

Based upon all of the foregoing, we hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges MARTIN, John C. and HORTON concur.