STATE OF NORTH CAROLINA v. DARRELL EUGENE STRICKLAND

No. 483A95

(Filed 24 July 1997)

**1. Jury § 132 (NCI4th)— jury selection—note from prospec-tive jurors—questions by defendant not permitted**

The trial court did not prohibit defendant from obtaining ade-quate information about any biases or preconceived fears held by prospective jurors in a first-degree murder prosecution when it refused to permit defendant to question prospective jurors about their submission of a note to the trial court in which they ques-tioned whether defendant kept notes including jurors' names and addresses taken during jury selection where the jury-selection transcript shows that the trial court permitted defense counsel to question prospective jurors in detail about any bias they may have had against defendant. It was proper for the trial court to protect the jurors' ability to ask questions during the jury-selection process by protecting them from multiple, and perhaps intimidating, inquiries.

**Am Jur 2d, Jury §§ 264-266.**

2. **Constitutional Law § 309 (NCI4th)— jury selection— admission defendant holding gun—not concession of guilt—not ineffective assistance of counsel**

Defense counsel's statements during jury selection in a first-degree murder case that defendant was holding the gun that killed the victim at the time the victim was shot did not amount to a concession of guilt to which defendant had not agreed in violation of defendant's right to the effective assistance of counsel where the uncontroverted evidence showed that defendant was holding the gun when the victim was shot, and counsel's statements were not the equivalent of asking the jury to find defendant guilty of any charge.

**Am Jur 2d, Criminal Law §§ 985-987.**

**Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.**

3. **Constitutional Law § 310 (NCI4th)— opening statement— unsupported assertion—admission of criminal record—not ineffective assistance of counsel**

Defense counsel's opening statement in a first-degree murder prosecution did not violate defendant's Sixth Amendment right to effective assistance of counsel because it allegedly included assertions for which there was no supporting evidence and an admission that defendant had a criminal record where statements of which defendant complains suggested that the victim entered defendant's home with a weapon, that the victim acted in a belligerent manner, and that defendant unintentionally shot the victim while attempting to evict him from his home; such a depiction of the incident was a reasonable tactic used by counsel in an attempt to explain why defendant pointed a gun at the victim and why the gun went off, and defense counsel could have thought his statements would be supported by the testimony of the two eyewitnesses; and defense counsel reasonably could have decided to admit the prior criminal record in order to lessen the impact when it came out during the trial. Even if it is assumed that defense counsel's performance was deficient, the result would not have been different in the absence of counsel's alleged errors in light of the overwhelming evidence of defendant's guilt.

**Am Jur 2d, Criminal Law §§ 985-987.**

**Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.**

**4. Evidence and Witnesses § 284 (NCI4th)— prior assault by victim—irrelevancy to show fear by defendant**

Testimony that a murder victim had assaulted his wife a few months prior to the murder and that defendant knew of this assault was not admissible under Rule 404(b) to show that defendant was fearful of the victim at the time of the killing where there was no allegation or evidence that defendant shot the victim in self-defense, defendant's theory of the case was that defendant pointed a gun at the victim to persuade him to leave defendant's home and that the gun accidentally fired, and evidence of the victim's prior assault against his wife was thus not relevant to the killing of the victim. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 404 et seq.**

**5. Constitutional Law § 244 (NCI4th)— defendant's statement to individual—failure to compel disclosure of name— no Brady violation**

The trial court's failure to compel the State to disclose to a defendant charged with first-degree murder the name of an individual to whom defendant had stated that the gun had gone off accidentally did not violate defendant's due process rights under *Brady v. Maryland*, 373 U.S. 83, because (1) defendant is presumed to know to whom he spoke about the murder, and nothing in N.C.G.S. § 15A-903(a)(2) requires the prosecutor to disclose the name of an individual to whom defendant made oral statements relevant to the case or the facts and circumstances surrounding defendant's oral statements, and (2) defendant's statement was not material within the meaning of *Brady* since the overwhelming evidence at trial, including defendant's confession, tended to show that defendant intended to kill the victim, and there was no reasonable probability that the outcome of the case would have been different if the name of the individual had been disclosed to defendant. ˙

**Am Jur 2d, Criminal Law §§ 770 et seq., 998 et seq.**

**6. Evidence and Witnesses § 1083 (NCI4th)— refusal to put statement in writing—testimony by SBI agent—not self-incrimination**

The admission of testimony by an SBI agent that defendant refused to make a written statement after he had made his oral statement to the police did not violate defendant's right against compulsory self-incrimination where defendant was advised of his *Miranda* rights and knowingly and willingly waived them; defendant then made a detailed statement; and no attempt was made to construe defendant's decision not to put the statement he had given into written form as an admission of his guilt.

**Am Jur 2d, Evidence § 717.**

**7. Evidence and Witnesses § 284 (NCI4th)— defendant's prior violent acts—no claim of self-defense—inadmisibility**

The trial court in a first-degree murder trial did not err by excluding testimony by defendant's girlfriend about defendant's past violent conduct against his wife or about the victim's threats to "whip [defendant's] tail" on the night of the murder where defendant did not claim self-defense but claimed that the killing was an accident.

**Am Jur 2d, Evidence §§ 404 et seq.**

**8. Criminal Law § 467 (NCI4th Rev.)— closing arguments—inferences from evidence—no misstatement of law**

Statements made by the prosecutors in closing arguments in a first-degree murder trial were reasonable inferences taken from the evidence, and the prosecutors did not misrepresent the law concerning provocation as grounds for murder.

**Am Jur 2d, Trial §§ 554, 555, 609, 632-639.**

**9. Criminal Law § 1364 (NCI4th Rev.)— capital sentencing—aggravating circumstance—prior violent felony—combativeness with police at arrest—admissibility**

Evidence that defendant was uncooperative and combative with police officers when they sought to apprehend him for a prior assault in which defendant cut the victim down the back with a knife was admissible in a capital sentencing proceeding in support of the (e)(3) aggravating circumstance that defendant

had previously been convicted of a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Trial §§ 554, 555, 609.**

**10. Criminal Law § 1364 (NCI4th Rev.)— capital sentencing— aggravating circumstance—prior violent felony—witness's observations—fear of defendant and effect on life**

Testimony by a witness concerning her observations of defendant's prior assault on her husband with a knife was properly admitted in a capital sentencing proceeding in support of the (e)(3) aggravating circumstance. Testimony by the witness that she was afraid that defendant would have cut her with the knife if given the chance and that she is reminded daily of the assault served to establish for the jury the severity of defendant's attack on her husband and the fear which defendant inflicted and was also properly admitted in support of the (e)(3) aggravating circumstance.

**Am Jur 2d, Criminal Law §§ 527, 533.**

**11. Criminal Law § 1340 (NCI4th Rev.)— capital sentencing— mitigating evidence—hearsay—exclusion by court**

The trial court in a capital sentencing hearing did not err in excluding an officer's hearsay testimony that defendant's victim in a prior voluntary manslaughter conviction had left a bar before defendant where the testimony was offered in response to the State's evidence of the (e)(3) aggravator; this evidence had no direct mitigating value and was not relevant to whether defendant had been convicted of a prior felony; the testimony required the jury to speculate about defendant's role in a case that had already been decided against him; and the trial court could properly have determined that the tendered testimony was outweighed by the danger of confusing or distracting the jury.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**12. Criminal Law § 1364 (NCI4th Rev.)— capital sentencing— aggravating circumstance—prior violent felony—appeal of conviction pending—question not considered**

The Supreme Court need not consider defendant's argument that his voluntary manslaughter conviction should not have been submitted in support of the (e)(3) aggravating circumstance, conviction of a prior violent felony, because an appeal of the con-

viction was pending at the time of the capital sentencing proceeding in this case where the conviction has been upheld by the Court of Appeals, and the Supreme Court dismissed defendant's appeal of a constitutional question and denied his petition for discretionary review, thus completing the appeals process.

**Am Jur 2d, Criminal Law §§ 527, 533.**

**13. Criminal Law § 1384 (NCI4th Rev.)— capital sentencing— mitigating circumstances—mental or emotional disturbance—insufficient evidence**

The trial court did not err by refusing to submit to the jury in a capital sentencing proceeding the statutory mental or emotional disturbance mitigating circumstance where there was evidence that defendant was agitated because of the victim's belligerent conduct, including his calling defendant a "punk Indian son-of-a-bitch," that defendant was angry when he shot the victim, and that the shooting occurred some time after the victim had used the derogatory racial slur or had talked of fighting defendant. The inability to control one's temper is neither mental nor emotional disturbance as contemplated by this mitigator. N.C.G.S. § 15A-2000(f)(2).

**Am Jur 2d, Criminal Law §§ 598, 599, 609.**

**14. Criminal Law § 1389 (NCI4th Rev.)— capital sentencing— impaired capacity mitigating circumstance—insufficient evidence**

The trial court did not err by declining to submit the impaired capacity mitigating circumstance to the jury in a capital sentencing proceeding where the evidence tended to show only that defendant had consumed about six beers and a few drinks of liquor prior to the killing, and there was evidence that the consumption of this alcohol did not so impair defendant as to prevent him from understanding the criminality of his conduct or to affect his ability to control his actions. N.C.G.S. § 15A-2000(f)(6).

**Am Jur 2d, Criminal Law §§ 598, 599, 609.**

**15. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— nonstatutory mitigating circumstance—completion of probation—insufficient evidence**

The trial court did not err by refusing to submit to the jury in a capital sentencing proceeding the nonstatutory mitigating cir-

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

cumstance that defendant had successfully completed probation following a prior assault conviction where defendant objected to the State's introduction of the court file for his assault conviction; the court ruled that the State could present to the jury only the indictment, plea, and judgment; defendant did not request that records concerning his completion of probation be admitted and did not call his probation officer as a witness to testify about his conduct during probation; and there was thus no evidence from which the jury could have found the existence of this mitigating circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599, 606 et seq.**

**16. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— nonstatutory mitigating circumstance—refusal to submit— subsumption by submitted circumstance**

Any error in the trial court's refusal to submit to the jury in a capital sentencing proceeding the nonstatutory mitigating circumstance that defendant "feels that he owes it to his children and his people to refuse any kind of mitigating defense and instead to be a good strong Indian" was harmless beyond a reasonable doubt where this circumstance was subsumed by the submitted nonstatutory mitigating circumstance that "the defendant has great personal pride and belief in the values of his Native American Heritage," and the jurors were allowed to consider any other circumstance arising from the evidence that any of them deemed to have mitigating value under the catchall mitigating circumstance. N.C.G.S. § 15A-2000(f)(9).

**Am Jur 2d, Criminal Law §§ 598, 599, 606 et seq.**

**17. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—no gross impropriety**

Statements by the prosecutor in his closing argument in a capital sentencing proceeding were similar to statements previously reviewed by the Supreme Court and found to be proper and did not require intervention by the trial court *ex mero motu*.

**Am Jur 2d, Trial §§ 533 et seq.**

**Propriety and prejudicial effect of prosecuting attorney's arguing new matter or points in his closing summation in criminal case. 26 ALR3d 1409.**

**18. Criminal Law § 468 (NCI4th Rev.)— capital sentencing— closing argument—comment not supported by evidence**

The trial court properly sustained an objection to defense counsel's closing argument in a capital sentencing proceeding that the victim in defendant's prior conviction of voluntary manslaughter had fired a gun during the incident because the argument was not supported by the evidence where only hearsay evidence tended to show that a gun containing four spent shells was found in the victim's possession, and no evidence tended to show when those shells had been fired.

**Am Jur 2d, Trial § 609.**

**19. Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate to the sentence imposed in similar cases where defendant was found guilty of premeditated and deliberate murder; defendant had been convicted of two prior violent felonies, and the jury found the (e)(3) conviction of a prior violent felony aggravating circumstance; the case has aspects of a lying-in-wait case because defendant, unaware to the victim, stood behind the victim and shot him at close range with a shotgun; and the present case is more similar to cases in which the Supreme Court has found the sentence of death proportionate than to those in which the Court has found the sentence disproportionate or to those in which juries have consistently returned recommendations of life imprisonment.

**Am Jur 2d, Criminal Law §§ 598, 599, 609.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Steelman, J., on 26 October 1995 in Superior Court, Union County, upon a jury verdict of first-degree murder. Heard in the Supreme Court 19 March 1997.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*Sam J. Ervin, IV, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant Darrell Eugene Strickland was tried capitally upon an indictment charging him with the first-degree murder of Henry

Brown. The jury returned a verdict of guilty of first-degree murder on the basis of premeditation and deliberation. Following a separate capital sentencing proceeding, the jury recommended a sentence of death, and the trial court sentenced defendant accordingly.

The State's evidence tended to show *inter alia* that on 1 January 1995, the victim, Henry Brown, went with his wife, Gail Brown, and her six-year-old child to the home of defendant, who lived with Sherri Jenkins and their two-year-old son in Marshville, North Carolina. Mrs. Brown had formerly worked with both Ms. Jenkins and defendant at Cuddy Foods in Marshville and had been "good friends" with Ms. Jenkins for about six years. Ms. Jenkins had been dating defendant for thirteen years, had mothered his two-year-old son, and had been cohabiting with defendant for about six months at the time of the murder.

The Browns arrived at the residence of defendant and Ms. Jenkins at approximately 8:00 p.m. Mr. Brown had been drinking but was not drunk. Mr. Brown and defendant went into the kitchen, while Mrs. Brown and Ms. Jenkins stayed in the living room. The children were sent into the bedroom to play, and the adults began drinking alcoholic beverages. Ms. Jenkins testified at trial that they shared a marijuana joint and that all four adults drank from a half-gallon bottle of gin. The four adults continued drinking and talking for several hours. During this time, a shotgun owned by defendant was passed around. Everyone was talking about shooting it and joking about shooting each other, but there were no serious threats. There were two shells in the gun and no other shells in the house. Ms. Jenkins took the gun outside and fired it once.

At approximately 1:30 a.m., Mrs. Brown and Ms. Jenkins were in the kitchen preparing food for everyone to eat. The men were in the living room. Mrs. Brown testified that, while in the kitchen, she looked into the living room, where she saw her husband sitting on an ottoman with his head in his hands. Defendant was standing to the back and side of Mr. Brown with the gun in his hand pointed at Mr. Brown. Mrs. Brown saw defendant's lips move but could not hear what he said. She then heard the gun being fired, smelled burning flesh, and saw her husband fall over.

Ms. Jenkins testified that she witnessed the victim sitting on the ottoman with defendant standing behind him. The victim was mumbling something that she could not hear. She stepped outside to feed the cats, during which time she heard the gun go off. She came back

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

inside and saw the victim fall over. According to Ms. Jenkins, the victim's behavior that evening was obnoxious and loud. He was cursing at intervals and drinking alcohol throughout the night.

Immediately following the shooting, defendant left in his truck. He drove to the house of his ex-wife, Ms. Betty Sanders, in Marshville. Defendant asked Ms. Sanders to drive him in his truck to his uncle's house in Rockingham. At approximately 2:45 a.m., Ms. Sanders and defendant were stopped in Rockingham by Officer Poston and Officer Grant of the Rockingham Police Department, which had been notified to be on the lookout for defendant. Officer Grant transported defendant to the Rockingham Police Department.

At the Police Department, after being advised of his constitutional rights, defendant spoke to Special Agent Tony Underwood of the State Bureau of Investigation (SBI) and Detective Bill Tucker of the Union County Sheriff's Department. Defendant told them that he shot Henry Brown because "he pissed me off" and because "he called me a punk Indian son-of-a-bitch." Defendant said that no one else had anything to do with the shooting. He said that he "meant to kill" the victim. He denied that alcohol had caused him to commit the murder. Defendant said that he had not planned to kill the victim. He did however say that he had to cock the gun in order to get it to shoot.

Detective Easley of the Union County Sheriff's Department examined the crime scene during the early morning hours of 2 January 1995. Detective Easley found the body of Henry Brown lying on the living room floor on its left side. Blood was coming from the victim's nose and mouth and a hole in the back shoulder area. There was no weapon on or around the victim's body. In the gun cabinet, Detective Easley found one Ithaca twelve-gauge pump shotgun which contained one spent Winchester "double aught" buckshot casing in the chamber. He also found one spent "double aught" buckshot shell outside on the ground about eleven inches from the front doorstep.

Michael Gavin of the forensic firearms and tool marks unit of the SBI laboratory tested the shotgun and found that the gun functioned properly. Gerald Long, owner of Long's Sporting Goods and Pawn Shop, testified that he had experience in selling, firing, and repairing Ithaca twelve-gauge pump shotguns. He testified that, in his opinion, the Ithaca shotgun, in the hands of someone not experienced with it, would go off faster than any other shotgun on the market and is susceptible to accident.

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

**[1]** By his first assignment of error, defendant contends that the trial court's refusal to permit him to question prospective jurors about their submission of a note to the trial court was error. In the note submitted at the conclusion of the first day of jury selection, the prospective jurors questioned whether defendant kept notes including jurors' names and addresses taken during jury selection. Defendant argues that the trial court's ruling unduly restricted the scope of his questioning and prohibited him from obtaining adequate information about any biases or preconceived fears held by prospective jurors.

"The trial court has the duty to supervise the examination of prospective jurors. Regulation of the manner and extent of questioning of prospective jurors rests largely in the trial court's discretion." *State v. Jaynes*, 342 N.C. 249, 265, 464 S.E.2d 448, 458 (1995), *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1080 (1996). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Green*, 336 N.C. 142, 164, 443 S.E.2d 14, 27 (1994), *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). We have examined the jury-selection transcript and find that the trial court permitted defense counsel to question prospective jurors in detail about any bias they may have had against defendant. The trial court appropriately exercised its discretion in limiting defense counsel's questions concerning the circumstances that gave rise to the jurors' note. It was proper for the trial court to protect the jurors' ability to ask questions concerning the jury-selection process by protecting them from multiple, and perhaps intimidating, inquiries. Accordingly, this assignment of error is overruled.

**[2]** By another assignment of error, defendant contends that defense counsel repeatedly made concessions of guilt during the jury-selection process without his permission in violation of this Court's decision in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986). In particular, defendant argues that defense counsel's repeated statements during jury selection that defendant was holding the gun that killed the victim at the time the victim was shot amounted to a concession of guilt to which defendant had not agreed.

In *Harbison*, defense counsel in a first-degree murder case asked the jury to convict the defendant of involuntary manslaughter instead of first- or second-degree murder, without first receiving permission from the defendant to make such argument. This Court wrote that

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

"[w]hen counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away." *Id.* at 180, 337 S.E.2d at 507. We concluded that counsel's admission of defendant's guilt without his permission was a denial of the defendant's Sixth Amendment right to effective assistance of counsel. *Id.*

In the present case, the prosecutor expressed concern at trial that defense counsel's statements could violate the rule in *Harbison* if defendant had not agreed to them. When the prosecutor attempted to make a record showing that defendant had consented to the statements, defense counsel responded

- [t]hat [the victim] was shot with a shotgun and at the time it was in my client's hands. That, your honor, is not an admission of guilt and we don't intend for it to be an admission of guilt. To the extent that it can be interpreted as admission of guilt, and it shouldn't be, we do not intend that that in any way be interpreted as an admission of guilt. We intend it to be an accurate statement of the circumstances that occurred at the time of the incident in question.

We are persuaded that the statements made by defense counsel did not amount to an admission of defendant's guilt. The uncontroverted evidence in this case was that defendant had been holding the gun when Mr. Brown was shot. Defense counsel's statements were not the equivalent of asking the jury to find defendant guilty of any charge, and therefore, *Harbison* does not control. *See, e.g., State v. Harvell,* 334 N.C. 356, 361, 432 S.E.2d 125, 128 (1993); *State v. Greene,* 332 N.C. 565, 572, 422 S.E.2d 730, 733-34 (1992). Accordingly, we overrule this assignment of error.

**[3]** By another assignment of error, defendant contends that defense counsel's opening statement violated his Sixth Amendment right to effective assistance of counsel because it included numerous assertions for which there was no supporting evidence and an unnecessary admission that defendant had a criminal record. Defendant argues that by promising proof of a defense for which no evidence was presented, defense counsel lost his credibility with the jury, thereby prejudicing defendant.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell,*

312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). In determining whether a defendant has been denied the effective assistance of counsel, we apply the two-part test set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). Therefore, to prevail under this assignment of error, defendant must prove that counsel's performance was so deficient as to deprive him of his right to be represented and that absent the deficient performance by defense counsel, there would have been a different result at trial. *State v. Braswell*, 312 N.C. at 562-63, 324 S.E.2d at 248. Having reviewed defense counsel's opening statement and the evidence in this case, we conclude that defendant has not met his burden of proof. Those statements by defense counsel of which defendant complains suggested that the victim entered defendant's home with a weapon, that the victim acted in a belligerent manner, and that defendant unintentionally shot the victim while attempting to evict him from his home. Such a depiction of the incident was a reasonable tactic used by defense counsel in an attempt to explain why defendant pointed a gun at the victim and why the gun went off. Defense counsel could have thought that his statements would be supported by the testimony of the two eyewitnesses, the victim's wife and defendant's girlfriend.

As to comments concerning defendant's prior criminal record, defense counsel reasonably could have decided to admit this fact during his opening statement in order to lessen the impact when it came out during the course of the trial. Further, even if we assume *arguendo* that counsel's performance was deficient, it is apparent that the result would not have been different in the absence of counsel's alleged errors. The evidence in this case was overwhelming. Two eyewitnesses saw defendant holding the gun pointed at the victim's back while the victim was sitting with his head in his hands, heard the gun go off, and saw the victim fall over on his side. Defendant bragged to police officers that he had killed the victim and admitted to having intended to do so. We detect no likelihood that absent the complained-of performance during defense counsel's opening statement, the result in this trial would have been different. We overrule this assignment of error.

[4] By another assignment of error, defendant contends that the trial court erred by precluding testimony during cross-examination of the victim's wife that the victim had assaulted his wife and that defendant knew of this assault. Defendant argues that this evidence was relevant as it tended to show that defendant was aware that the victim

could be violent if made angry. Defendant submits that this evidence shed light upon defendant's mental state of fearing an assault by the victim and that it should have been admitted pursuant to Rule 404(b) of the North Carolina Rules of Evidence. N.C.G.S. § 8C-1, Rule 404(b) (1992). We disagree.

Where, as in this case, a defendant seeks under Rule 404(b) to use evidence of a prior violent act by the victim to prove the defendant's state of mind at the time he killed the victim, the defendant must show that he was aware of the prior act and that his awareness somehow was related to the killing. *See State v. Smith*, 337 N.C. 658, 666, 447 S.E.2d 376, 380 (1994). Defendant in this case sought to have admitted during the State's case-in-chief evidence that the victim had physically abused his wife a few months prior to the murder and that defendant had been told of this alleged abuse. Defendant submits that this evidence tended to show that defendant was fearful of the victim at the time of the killing. However, there was no evidence, and defendant did not allege, that defendant shot the victim in self-defense. Defendant's theory of the case was that defendant had pointed the gun at the victim to persuade him to leave defendant's home and that the gun accidentally fired. Under these circumstances, evidence of the victim's prior assault against his wife was not relevant to the killing of the victim. *See State v. Leazer*, 337 N.C. 454, 458, 446 S.E.2d 54, 56-57 (1994). The trial court did not err in excluding this testimony. Accordingly, we overrule this assignment of error.

[5] By another assignment of error, defendant argues that it was plain error for the trial court not to compel the State to disclose the name of an individual to whom defendant had stated that the gun had gone off accidentally. Defendant contends that the trial court, within its discretion, could have required the State to disclose this information at trial. According to defendant, the trial court's failure to compel the release of the requested information violated his constitutional guarantees as set out by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963).

In *Brady*, the United States Supreme Court held that suppression by the prosecution of favorable evidence which is material to the guilt or punishment of a defendant violates due process. *Id.* Favorable evidence is material if there is a "reasonable probability" that its disclosure to the defense would result in a different outcome in the jury's deliberation. *Kyles v. Whitley*, 514 U.S. 419, ——, 131 L. Ed. 2d 490, 496 (1995). We conclude that the trial court's failure to compel disclosure of the name of the person to whom defendant allegedly said he acci-

dentally shot the victim did not violate principles of due process explained in *Brady* and its progeny.

First, we find it of paramount importance that defendant was aware of the substance of the statement and that it was made by him. Defendant complains only that he was not given the name of the individual to whom he said that the gun fired accidentally. Defendant is presumed to know to whom he spoke about the murder. N.C.G.S. § 15A-903(a)(2) requires the trial court, upon motion of the defendant in a criminal case, to order the prosecutor to divulge the *substance* of any oral statements made by the defendant that are relevant to the case. N.C.G.S. § 15A-903(a)(2) (1988). Nothing in the statute requires the prosecutor to disclose the name of the individual to whom the defendant has made such a statement. There is no requirement that the trial court compel disclosure of the facts and circumstances surrounding the defendant's oral statement. *See State v. Bruce*, 315 N.C. 273, 278, 337 S.E.2d 510, 514 (1985); *accord State v. Harris*, 323 N.C. 112, 122, 371 S.E.2d 689, 695 (1988).

Even assuming *arguendo* that the trial court's refusal to order the prosecution to divulge the name of the individual to whom defendant spoke prevented defendant from presenting this favorable evidence at trial, we do not find that defendant's oral statement that the gun went off accidentally was material within the Supreme Court's meaning under *Brady*. Defendant made a full statement to Officers Poston and Grant and to SBI Agent Underwood on the morning following the murder in which he repeatedly said that he meant to kill the victim. Further, the State's evidence tended to show that defendant intentionally removed the gun from the cabinet where it was stored and pointed it at the victim's back at close range. Defendant admitted to police that he knew the gun was loaded and that he slid the pump mechanism on the gun, causing a shell to enter the firing chamber. The evidence was uncontroverted that the gun was operating properly and that the trigger had to be pulled for it to fire. In light of this overwhelming evidence, we do not find a reasonable probability that the outcome of the proceeding would have been different if the prosecution had disclosed the name of the individual to whom defendant spoke.

The trial court's refusal to compel divulgence of the requested information was not error as it did not violate defendant's due process right set out under *Brady*. Accordingly, this assignment of error is overruled.

**[6]** By another assignment of error, defendant contends that the trial court erred in admitting testimony by SBI Agent Underwood that defendant refused to make a written statement after he had made his oral statement to police. Defendant argues that admitting this testimony violated defendant's right against compulsory self-incrimination.

Defendant in this case made an oral statement to law enforcement officers during the course of about an hour of interrogation on the morning following the murder. At the end of the interview, the officers asked defendant if he wished to put into written form what he had told them. Defendant indicated that he did not wish to make a written statement. At that time, the officers asked no further questions. Defendant does not argue that the officers failed to advise him of his constitutional rights in compliance with *Miranda* nor that he did not voluntarily answer the law enforcement officers' questions. Instead, defendant argues that it was error for the trial court to allow testimony by Agent Underwood that defendant declined to make a written statement.

Before a trial court may admit over objection statements made by a defendant to police officers while in custody, the trial court must determine that the defendant was made aware of his right not to incriminate himself and his right to counsel prior to being questioned. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Under the dictates of *Miranda*, this Court has long held that a defendant's decision to maintain his silence may not be construed as an admission of guilt. *See State v. Williams*, 305 N.C. 656, 674, 292 S.E.2d 243, 254-55, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982).

This Court addressed a contention similar to defendant's in *State v. Williams*, 305 N.C. 656, 292 S.E.2d 243. In *Williams*, the trial court admitted testimony that after having answered a few questions by law enforcement officers, the defendant had asked for a lawyer. The defendant argued on appeal that admission of his request for a lawyer during his interrogation violated his right to remain silent, his right to counsel, and his right to due process of law. In rejecting this argument, we found it of paramount importance that the defendant had been advised of his *Miranda* rights and had voluntarily answered the officers' questions, and that the State did not use the defendant's request for an attorney to suggest his guilt. *Id.* at 674, 292 S.E.2d at 254-55.

Having reviewed the trial transcript, we do not find that admission of this remark by Agent Underwood during his summary of

defendant's interview violated defendant's rights against self-incrimination. Defendant was advised of his *Miranda* rights and knowingly and willingly waived them. Defendant then proceeded to make a long and detailed statement. Once defendant indicated that he did not wish to make a written statement, the law enforcement officers did not ask any further questions. No attempt was made to construe defendant's decision not to put the statement he had given into written form as an admission of his guilt. The testimony that he declined to put his statement into writing in no way prejudiced defendant. Accordingly, we overrule this assignment of error.

[7] By another assignment of error, defendant contends that the trial court erred by not allowing defendant's girlfriend, Sherri Jenkins, to testify *inter alia* as to the victim's past violent conduct against his wife, about the victim's threats to "whip [defendant's] tail" on the night of the murder, or about defendant's having asked the victim to leave prior to the shooting. Defendant asserts that testimony of the victim's violent character should have been admitted to negate evidence that defendant committed the murder with premeditation and deliberation. As we have previously noted, evidence of prior violent acts by the victim or of the victim's reputation for violence may, under certain circumstances, be admissible to prove that a defendant had a reasonable apprehension of fear of the victim. *State v. Smith*, 337 N.C. at 666, 447 S.E.2d at 380. However, as we have already discussed in this case, defendant did not claim self-defense, nor did he present any alternate theory under which this testimony would have been relevant at trial. To the contrary, he claimed that the killing was an accident. Therefore, the trial court did not err in excluding testimony by defendant's girlfriend concerning the victim's allegedly violent tendencies. Accordingly, we overrule this assignment of error.

[8] By another assignment of error, defendant contends that the trial court erred by not intervening *ex mero motu* during the prosecutors' closing arguments at the guilt-innocence phase of the trial. We disagree.

"Since defendant made no objection during closing arguments, he must demonstrate that the prosecutor's closing arguments amounted to gross impropriety." *State v. Rouse*, 339 N.C. 59, 91, 451 S.E.2d 543, 560 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995). Defendant contends that the two prosecutors made several statements in their closing arguments for which no evidence was presented at trial and that one misstated the law concerning provocation

as grounds for murder. After reviewing the transcript, we are convinced that all of the statements made by the prosecutors were reasonable inferences taken from the evidence presented at trial and that they did not misrepresent the law. As such, the prosecutors' arguments did not rise to the level of such gross impropriety as to require intervention by the trial court on its own motion. We therefore overrule this assignment of error.

**[9]** By another assignment of error, defendant contends that the trial court erred in the capital sentencing proceeding by admitting testimony offered in support of the aggravating circumstance that "defendant had previously been convicted of a felony involving the use or threat of violence to the person." N.C.G.S. § 15A-2000(e)(3) (Supp. 1994) (amended 1995). The State introduced evidence to the effect that defendant had been uncooperative and combative with police when they sought to apprehend him for a prior assault on an individual named Mr. Todd Kendall in which defendant cut Mr. Kendall down the back with a knife. Defendant argues that his conduct towards the police following his assault on Mr. Kendall was not relevant to support the submission of or the weight to be given to this statutory aggravating circumstance.

We recently rejected a similar argument in *State v. Heatwole*, 344 N.C. 1, 19, 473 S.E.2d 310, 319 (1996), *cert. denied,* — U.S. —, 137 L. Ed. 2d 339 (1997), and see no reason to revisit the issue here. This assignment of error is overruled.

**[10]** By another assignment of error, defendant contends that the trial court committed plain error in the capital sentencing proceeding by not excluding certain testimony of Mr. Kendall's wife concerning defendant's prior assault on Mr. Kendall. Defendant argues that Mrs. Kendall's testimony was filled with opinions and highly emotional statements which were unreliable and irrelevant. For reasons that follow, we reject defendant's argument.

The Rules of Evidence, although not applicable to capital sentencing proceedings, nevertheless may be relied upon for guidance when determining questions of reliability and relevance. *State v. Bond*, 345 N.C. 1, 31, 478 S.E.2d 163, 179 (1996). Under the Rules of Evidence, a witness may testify as to any relevant matter about which he has personal knowledge. N.C.G.S. § 8C-1, Rule 602 (1992). Furthermore, a lay witness may testify as to his or her opinion, provided that the opinion is rationally based upon his or her percep-

tion and is helpful to the jury's understanding of the testimony. N.C.G.S. § 8C-1, Rule 701 (1992). Using these two evidentiary rules as guidelines, we conclude that the testimony by Mrs. Kendall was competent. Most of her testimony about which defendant complains simply described the circumstances surrounding defendant's assault on her husband and arose from Mrs. Kendall's observations at the time of the assault. Mrs. Kendall's statements that she was afraid that defendant would have cut her with the knife if given the chance and that she is reminded daily of the assault served to establish for the jury the severity of defendant's attack on Mr. Kendall and the fear which defendant inflicted.

In *State v. Mosely*, 336 N.C. 710, 445 S.E.2d 906 (1994), *cert. denied*, 513 U.S. 1120, 130 L. Ed. 2d 802 (1995), we rejected the defendant's argument that a victim's graphic testimony of the prior sexual assault committed by defendant upon her, offered in support of the (e)(3) aggravator, should have been excluded as being highly prejudicial and as creating a mini-trial of the prior felony conviction. In so doing, we restated the principle that the State was entitled to present the circumstances surrounding the prior felony conviction to support the submission of the (e)(3) aggravator. *Id.* at 720, 445 S.E.2d at 912. In the case *sub judice*, the testimony given by Mrs. Kendall was no more highly emotional than that which we approved in *Mosely*. We conclude that Mrs. Kendall's statements, including those expressing her fear of defendant and the effect that defendant's attack has had on her life, were properly admitted by the trial court. This assignment of error is overruled.

[11] By another assignment of error, defendant contends that the trial court erred in the capital sentencing proceeding by excluding testimony of an investigating officer tendered in response to the State's evidence in support of the (e)(3) aggravator. Defendant argues the testimony had relevant mitigating value. We disagree.

As previously noted, the North Carolina Rules of Evidence do not apply to capital sentencing proceedings, but may be used as guidelines in the determination of whether certain evidence may be admitted. *State v. Bond*, 345 N.C. at 31, 478 S.E.2d at 179. The trial court's determination of admissibility of evidence in a capital sentencing proceeding should be based upon considerations of whether the evidence is pertinent and reliable. *State v. Rose*, 339 N.C. 172, 200, 451 S.E.2d 211, 227 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 818 (1995).

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

In the instant case, defendant sought to introduce evidence of supposed mitigating value to contrast the State's evidence of a prior conviction of voluntary manslaughter in support of the (e)(3) aggravator. In particular, defendant wanted Deputy Clemmons, an officer who investigated the prior manslaughter incident, to testify that defendant's victim, Mr. Skipper, had left the bar before defendant and had a gun in his possession at the time defendant shot him. Defendant was allowed to establish that a .32-caliber gun with four discharged rounds was found at the scene and that Deputy Clemmons had testified at the probable cause hearing that witnesses told him that this gun was in the possession of Mr. Skipper at the time he was killed. The trial court sustained the State's objection to the testimony of whether Mr. Skipper had left the bar first. The record reflects that the trial judge excluded this testimony based on his determination that Deputy Clemmons had no firsthand knowledge of this fact and that Deputy Clemmons' testimony in this regard would be hearsay.

This Court has upheld the admission of otherwise inadmissible hearsay in capital sentencing proceedings where the hearsay statements were reliable and provided evidence which was relevant to sentencing and helpful to the sentencing jury in reaching a decision. See id. at 202, 451 S.E.2d at 228; State v. Roper, 328 N.C. 337, 364, 402 S.E.2d 600, 615-16, cert. denied, 502 U.S. 902, 116 L. Ed. 2d 232 (1991). A defendant is entitled to present any evidence in a capital sentencing proceeding which has mitigating value so long as it is pertinent to sentencing and is reliable. State v. Rose, 339 N.C. at 200, 451 S.E.2d at 227. However, the testimony of Deputy Clemmons concerning whether defendant or Mr. Skipper left the bar first had no direct mitigating value and was not relevant to whether defendant had been convicted of a prior felony. Instead, this evidence required that the jury speculate about defendant's role in a case that had already been adjudicated and decided against him. The State's evidence in the manslaughter trial tended to show that defendant, once outside the bar, shot Mr. Skipper several times, including firing the gun while standing directly over Mr. Skipper after he had fallen in the street. The jury in that case rejected any theory of self-defense. The trial court could properly have determined that any mitigating value that the tendered testimony of Deputy Clemmons may have had was outweighed by the danger of confusing or distracting the jury. Because of the undependable nature of the evidence, its limited mitigating value, and its potential to distract the jury, we conclude that the trial court did not err in excluding the testimony. Therefore, this assignment of error is overruled.

**[12]** In another assignment of error, defendant contends that his voluntary manslaughter conviction should not have been submitted to support the (e)(3) aggravating circumstance, conviction of a prior violent felony, because an appeal of the conviction was pending at the time of the capital sentencing proceeding in this case. We are not required to consider defendant's argument that a conviction is not final for purposes of the (e)(3) aggravator until all avenues of appeal have been exhausted. Defendant's appeal of his voluntary manslaughter conviction was heard in the Court of Appeals on 27 May 1996, and the conviction was upheld on 4 June 1996. *State v. Strickland,* 122 N.C. App. 580, 475 S.E.2d 259 (1996) (unpublished). This Court dismissed defendant's appeal of a constitutional question and denied his petition for discretionary review on 5 December 1996, 345 N.C. 182, 479 S.E.2d 208 (1996), completing the appeals process. The conviction having been upheld on appeal, we need not address its reliability prior to the completion of the appeals process. We overrule this assignment of error.

**[13]** By another assignment of error, defendant argues that the trial court erred by refusing to submit the statutory mitigator that the murder was committed while defendant was under the influence of mental or emotional disturbance. N.C.G.S. § 15A-2000(f)(2). Defendant contends that there was substantial evidence from which a reasonable juror could have found this circumstance to exist. Defendant's evidence tended to show that defendant was in an agitated state due to the victim's belligerent conduct, including his calling defendant a "punk Indian son-of-a-bitch" and that defendant was "pissed off" when he shot the victim.

A trial court must submit only those mitigating circumstances which are supported by substantial evidence. *State v. Chandler,* 342 N.C. 742, 756, 467 S.E.2d 636, 644, *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 133 (1996). The evidence in this case did not support defendant's contention that he suffered from a mental or emotional disturbance at the time of the murder. Although expert testimony is not always necessary to support a finding of this mitigator, *see, e.g., State v. Ali,* 329 N.C. 394, 421-22, 407 S.E.2d 183, 199 (1991), the absence of such testimony may be considered when determining whether the (f)(2) mitigator is supported by substantial evidence. In this case, the only evidence that defendant contends tends to show that he was under a mental or emotional disturbance at the time of the shooting is testimony concerning the victim's conduct and the statement by defendant that he shot the victim because defendant

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

was angry. We have previously stated that an inability to control one's temper is neither mental nor emotional disturbance as contemplated by this mitigator. *State v. Ward*, 338 N.C. 64, 112, 449 S.E.2d 709, 736 (1994), *cert. denied*, U.S. , 131 L. Ed. 2d 1013 (1995). The State's evidence tended to show that defendant shot the victim while he was seated on an ottoman with his head in his hands. The shooting occurred some time after the victim had used any derogatory racial slur or had talked of fighting defendant. Taking all the evidence as a whole, we conclude that there was insufficient evidence to permit submission of the (f)(2) mitigator to the jury and that therefore the trial court did not err in failing to submit this mitigator. This assignment of error is overruled.

[14] In another assignment of error, defendant contends that the trial court erred by not submitting the statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. N.C.G.S. § 15A-2000(f)(6). Defendant argues that evidence that defendant had been drinking and smoking marijuana at the time of the murder was sufficient to support submission of this mitigating circumstance. We disagree.

As previously stated, a trial court is required to submit only those statutory mitigating circumstances for which there is substantial evidence. *State v. Chandler*, 342 N.C. at 756, 467 S.E.2d at 644. Mere evidence that a defendant has consumed alcohol or drugs prior to the murder does not constitute substantial evidence supporting the (f)(6) mitigating circumstance. *State v. DeCastro*, 342 N.C. 667, 689, 467 S.E.2d 653, 664, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 170 (1996). Before the (f)(6) mitigating circumstance applies, a defendant's faculties must have been so impaired as to affect his ability to understand or control his actions. *State v. Jones*, 342 N.C. 457, 480, 466 S.E.2d 696, 707, *cert. denied*, —— U.S. ——, 135 L. Ed. 2d 1058 (1996). The evidence in this case tended to show that defendant had consumed about six beers and a few drinks of liquor. There was no evidence that consumption of this alcohol so impaired defendant as to prevent him from understanding the criminality of his conduct or that it affected his ability to control his actions. In fact, there was direct evidence to the contrary. At the time defendant made his statement to the police, he was asked whether alcohol had caused him to shoot the victim. Defendant responded that it had not. At the capital sentencing proceeding, expert witness Dr. Worthen testified that when he asked defendant how intoxicated he had been at the time of the murder,

defendant responded that he was "[h]igh, but not out of control." Given the nature of the evidence in this case, we conclude that the trial court did not err in declining to submit the (f)(6) mitigating circumstance. This assignment of error is overruled.

By another assignment of error, defendant contends that the trial court erred in the capital sentencing proceeding by denying his request to submit to the jury two nonstatutory mitigators for their consideration. We disagree.

To prevail on this assignment of error, defendant must first show that "(1) the nonstatutory mitigating circumstance is one which the jury could reasonably find had mitigating value, and (2) there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury." *State v. Benson*, 323 N.C. 318, 325, 372 S.E.2d 517, 521 (1988). If defendant satisfies this threshold requirement, a federal constitutional violation is established. *Id.* This Court must then determine if the State has carried its burden of proof to show that failure to submit the nonstatutory mitigating circumstance was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988); *State v. Green*, 336 N.C. 142, 183, 443 S.E.2d 14, 39. If the State has not carried that burden, defendant must receive a new capital sentencing hearing. *State v. Green*, 336 N.C. at 103, 443 S.E.2d at 39.

[15] The first nonstatutory mitigating circumstance that defendant sought to have submitted was that he had successfully completed probation following his prior assault conviction. We find that defendant has failed to establish that there was sufficient evidence presented at trial to support submission of this nonstatutory mitigating circumstance. Although the State entered into evidence the court file concerning defendant's prior assault conviction, defendant admits that he did not introduce the documents showing defendant's completion of his probation. During the capital sentencing proceeding, defendant objected to the introduction of the court file into evidence. As a result of defendant's objection, the court ruled that the State could present to the jury only the bill of indictment, the plea, and the judgment. The record reflects that defendant approved of the introduction of the file for these limited purposes and did not request that the records concerning his completion of probation be admitted. Defendant did not call as a witness his probation officer, who could have testified as to his conduct during probation. Because there was no evidence introduced from which the jury could have found the existence of this nonstatutory mitigating circumstance, the trial court

properly refused to submit the nonstatutory mitigating circumstance that defendant successfully completed his probation following his assault conviction. *See State v. Hill,* 331 N.C. 387, 415, 417 S.E.2d 765, 779 (1992), *cert. denied,* 507 U.S. 924, 122 L. Ed. 2d 684 (1993).

**[16]** Defendant also contends that the trial court erred by denying his request to submit to the jury the nonstatutory mitigating circumstance that defendant "feels that he owes it to his children and his people to refuse any kind of mitigating defense and instead to be a good strong Indian." During the capital sentencing proceeding, Dr. Worthen testified that defendant had told him that he did not want to beg for his life; that he would rather be executed than spend his life in prison; that he wanted his children to be proud of him; and that he wanted to be a good, strong Indian for his family. Assuming *arguendo* that such evidence was sufficient to support submission of this circumstance and that the jury reasonably could have found it to have mitigating value, we nevertheless conclude that any error here was harmless beyond a reasonable doubt.

We have previously held that failure to submit a nonstatutory mitigating circumstance is harmless beyond a reasonable doubt where the requested nonstatutory mitigating circumstance was subsumed by another submitted nonstatutory mitigating circumstance. *State v. Green,* 336 N.C. at 183, 443 S.E.2d at 38. The jury was allowed to consider in this case the nonstatutory mitigating circumstance that "the defendant has great personal pride and belief in the values of his Native American Heritage." The jurors were also allowed to consider any other circumstance arising from the evidence that any of them deemed to have mitigating value under the catchall statutory mitigating circumstance. N.C.G.S. § 15A-2000(f)(9). It is clear that the jury was able to consider and did consider the mitigating value of the statements made by defendant to Dr. Worthen. Therefore, any error in failing to submit this mitigating circumstance was harmless beyond a reasonable doubt. *State v. Green,* 336 N.C. at 183, 443 S.E.2d at 38.

**[17]** By another assignment of error, defendant contends that the trial court erred by not intervening *ex mero motu* to prevent portions of the prosecutor's closing argument during the capital sentencing proceeding. We disagree.

Because defendant failed to object during the State's closing argument, our review is limited to a determination of whether the argument was so grossly improper that the trial court should have

intervened on its own motion. *State v. McLaughlin*, 341 N.C. 426, 442, 462 S.E.2d 1, 9 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996). In reviewing the prosecutor's argument, we are mindful that trial counsel are allowed wide latitude in jury arguments and that the prosecutor of a capital case has a duty to zealously attempt to persuade the jury that, upon the facts presented, the death penalty is appropriate. *State v. Gibbs*, 335 N.C. 1, 64-65, 436 S.E.2d 321, 357-58 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). We have reviewed each of the prosecutor's statements about which defendant complains. We do not find them to be so grossly improper as to have required the intervention of the trial court *ex mero motu*. In fact, each statement complained of is similar to one that this Court has previously reviewed and found to be proper. *See State v. Bishop*, 343 N.C. 518, 552, 472 S.E.2d 842, 861 (1996) (prosecutor's statement that a circumstance is mitigating if it reduces moral culpability found to be correct statement of the law), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 723 (1997); *State v. McLaughlin*, 341 N.C. at 443, 462 S.E.2d at 10 (argument emphasizing defendant's responsibility for his fate did not unconstitutionally diminish the jury's responsibility in the sentencing decision); *State v. Conaway*, 339 N.C. 487, 528, 453 S.E.2d 824, 850 (statements by prosecutor about victim's family relationships and the loss suffered by the victim's family held proper), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995); *State v. Rouse*, 339 N.C. at 93, 451 S.E.2d at 561-62 (not improper for the prosecutor to discourage the jurors from allowing emotion or sympathy to cloud their judgment); *State v. McNeil*, 324 N.C. 33, 52-53, 375 S.E.2d 909, 920-21 (1989) (argument that jury must help in enforcement of the laws and that police cannot do it alone held proper), *sentence vacated on other grounds*, 494 U.S. 1050, 108 L. Ed. 2d 756 (1990). Accordingly, we overrule this assignment of error.

[18] By another assignment of error, defendant contends that the trial court erred by sustaining an objection to that portion of defense counsel's closing argument where he stated that the victim in defendant's conviction of voluntary manslaughter, Mr. Skipper, had fired a gun during the incident. We have long held that counsel is prohibited from arguing facts which are not supported by the evidence. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). Hearsay evidence only tended to show that a gun containing four spent shells was found in Mr. Skipper's possession. No evidence tended to show when those shells had been fired. There was no direct testimony that supported defense counsel's remark that the victim, Mr. Skipper, had

fired a gun at the time he was killed. This assignment of error is without merit.

Defendant raises twenty-three additional issues that he concedes have been decided contrary to his position previously by this Court. He raises these issues to provide this Court with the opportunity to reconsider its prior holdings and for the purpose of preserving them for any possible future judicial review. We have carefully reviewed defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

Having concluded that defendant's trial and separate capital sentencing proceeding were free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In the present case, defendant was convicted of first-degree murder based on premeditation and deliberation. During the capital sentencing proceeding, the jury found the aggravating circumstance that defendant had been previously convicted of a violent felony. N.C.G.S. § 15A-2000(e)(3). The sole statutory mitigating circumstance submitted was the catchall, N.C.G.S. § 15A-2000(f)(9), which the jury rejected. In addition, the jury failed to find the two nonstatutory mitigating circumstances that were submitted: that defendant was the father of three children and that defendant has great personal pride and belief in the values of his Native American Heritage. After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstance found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

[19] In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C.

208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, —— N.C. ——, 483 S.E.2d 396 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

In support of his argument that his sentence of death is disproportionate, defendant submits that the jury found only the (e)(3) aggravating circumstance (conviction of a prior violent felony) as a reason to impose the death penalty. Defendant contends that the present case is distinguishable from five cases in which the only aggravating circumstance was the conviction of a prior violent felony and in which the sentence of death was found proportionate. Two cases, *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987), and *State v. Wooten*, 344 N.C. 316, 474 S.E.2d 360 (1996), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 65 U.S.L.W. 3630 (1997), involve guilt based on a lying in wait theory, and the other three, *State v. Reeves*, 337 N.C. 700, 448 S.E.2d 802 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 860 (1995); *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995); and *State v. Lyons*, 343 N.C. 1, 468 S.E.2d 204, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996), involve a higher level of violence. We find these cases substantially similar to the present case.

In this case, defendant committed premeditated and deliberate murder. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Furthermore, this case has aspects of a lying-in-wait case because defendant, unaware to the victim, stood behind the victim and shot him at close range with a shotgun. The fact that the cases in which we found death proportionate had a higher level of violence than the present case does not preclude a finding of proportionality. The absence of excessive brutality beyond that required to kill does not mean defendant is any

STATE v. STRICKLAND

[346 N.C. 443 (1997)]

less deserving of the death penalty. In reviewing these cases presented by defendant, we find that the present case is not clearly distinguishable.

Furthermore, in the present case, defendant was convicted of two prior violent felonies. This Court has upheld a death sentence where the (e)(3) aggravating circumstance was the sole aggravating circumstance found by the jury. *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *State v. McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in this statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or to those in which juries have consistently returned recommendations of life imprisonment. Moreover, the jury's finding of the prior conviction of a violent felony aggravating circumstance is significant in finding a death sentence proportionate. *See, e.g., State v. Harris*, 338 N.C. 129, 449 S.E.2d 371 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 752 (1995). We note that none of the cases in which the death sentence was found to be disproportionate has included this aggravating circumstance. *See State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied,* 512 U.S. 1246, 129 L. Ed. 2d 883 (1994). For the foregoing reasons, we conclude that the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate. We hold that defendant received a fair trial, free of prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.