UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-13

DARRELL EUGENE STRICKLAND,

Petitioner - Appellant,

v.

GERALD J. BRANKER, Warden, Central Prison, Raleigh, North
Carolina,

Respondent - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte. Graham C. Mullen, Senior
District Judge. (3:02-cv-00033-GCM)

Argued: May 15, 2008                    Decided: June 25, 2008

Before WILLIAMS, Chief Judge, and MICHAEL and MOTZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Michael wrote the opinion,
in which Chief Judge Williams and Judge Motz joined.

**ARGUED:** James R. Glover, GLOVER & PETERSEN, PA, Chapel Hill, North
Carolina, for Appellant. Steven Franklin Bryant, NORTH CAROLINA
DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Ann Bach Petersen, GLOVER & PETERSEN, PA, Chapel Hill,
North Carolina, for Appellant. Roy Cooper, Attorney General of
North Carolina, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

MICHAEL, Circuit Judge:

Darrell Eugene Strickland was sentenced to death following his conviction for the first-degree murder of Henry Brown. After unsuccessfully seeking post-conviction relief in state court, Strickland filed a petition for a writ of habeas corpus in U.S. district court. The district court denied relief, finding several of Strickland's claims to be procedurally defaulted and denying several others on the merits. We granted a certificate of appealability with respect to the district court's determinations (1) that Strickland was not entitled to relief on the merits of a claim under Brady v. Maryland, 373 U.S. 83 (1963), and (2) that Strickland had defaulted a portion of his claim that he was denied the effective assistance of counsel during the sentencing phase of his case. Because we conclude that Strickland has not established the materiality necessary for his Brady claim nor the prejudice necessary for his ineffective assistance claim, we affirm the district court's denial of relief.

I.

Strickland was convicted by a North Carolina jury for the first-degree murder of Henry Brown. In affirming the conviction on direct appeal, the state supreme court described the circumstances of the murder as follows:

The State's evidence tended to show inter alia that on 1 January 1995, the victim, Henry Brown, went with his

wife, Gail Brown, and her six-year-old child to the home of [Strickland], who lived with Sherri Jenkins and their two-year-old son in Marshville, North Carolina. Mrs. Brown had formerly worked with both Ms. Jenkins and [Strickland] at Cuddy Foods in Marshville and had been "good friends" with Ms. Jenkins for about six years. Ms. Jenkins had been dating [Strickland] for thirteen years, had mothered his two-year-old son, and had been cohabiting with [Strickland] for about six months at the time of the murder.

The Browns arrived at the residence of [Strickland] and Ms. Jenkins at approximately 8:00 p.m. Mr. Brown had been drinking but was not drunk. Mr. Brown and [Strickland] went into the kitchen, while Mrs. Brown and Ms. Jenkins stayed in the living room. The children were sent into the bedroom to play, and the adults began drinking alcoholic beverages. Ms. Jenkins testified at trial that they shared a marijuana joint and that all four adults drank from a half-gallon bottle of gin. The four adults continued drinking and talking for several hours. During this time, a shotgun owned by [Strickland] was passed around. Everyone was talking about shooting it and joking about shooting each other, but there were no serious threats. There were two shells in the gun and no other shells in the house. Ms. Jenkins took the gun outside and fired it once.

At approximately 1:30 a.m., Mrs. Brown and Ms. Jenkins were in the kitchen preparing food for everyone to eat. The men were in the living room. Mrs. Brown testified that, while in the kitchen, she looked into the living room, where she saw her husband sitting on an ottoman with his head in his hands. [Strickland] was standing to the back and side of Mr. Brown with the gun in his hand pointed at Mr. Brown. Mrs. Brown saw [Strickland]'s lips move but could not hear what he said. She then heard the gun being fired, smelled burning flesh, and saw her husband fall over.

Ms. Jenkins testified that she witnessed the victim sitting on the ottoman with [Strickland] standing behind him. The victim was mumbling something that she could not hear. She stepped outside to feed the cats, during which time she heard the gun go off. She came back inside and saw the victim fall over. According to Ms. Jenkins, the victim's behavior that evening was obnoxious

3

and loud.  He was cursing at intervals and drinking alcohol throughout the night.

Immediately following the shooting, [Strickland] left in his truck.  He drove to the house of his ex-wife, Ms. Betty Sanders, in Marshville.  [Strickland] asked Ms. Sanders to drive him in his truck to his uncle's house in Rockingham.  At approximately 2:45 a.m., Ms. Sanders and [Strickland] were stopped in Rockingham by Officer Poston and Officer Grant of the Rockingham Police Department, which had been notified to be on the lookout for [Strickland].  Officer Grant transported [Strickland] to the Rockingham Police Department.

At the Police Department, after being advised of his constitutional rights, [Strickland] spoke to Special Agent Tony Underwood of the State Bureau of Investigation (SBI) and Detective Bill Tucker of the Union County Sheriff's Department.  [Strickland] told them that he shot Henry Brown because "he pissed me off" and because "he called me a punk Indian son-of-a-bitch." [Strickland] said that no one else had anything to do with the shooting.  He said that he "meant to kill" the victim.  He denied that alcohol had caused him to commit the murder.  [Strickland] said that he had not planned to kill the victim.  He did however say that he had to cock the gun in order to get it to shoot.

Detective Easley of the Union County Sheriff's Department examined the crime scene during the early morning hours of 2 January 1995.  Detective Easley found the body of Henry Brown lying on the living room floor on its left side.  Blood was coming from the victim's nose and mouth and a hole in the back shoulder area.  There was no weapon on or around the victim's body.  In the gun cabinet, Detective Easley found one Ithaca twelve-gauge pump shotgun which contained one spent Winchester "double aught" buckshot casing in the chamber.  He also found one spent "double aught" buck-shot shell outside on the ground about eleven inches from the front doorstep.

Michael Gavin of the forensic firearms and tool marks unit of the SBI laboratory tested the shotgun and found that the gun functioned properly.  Gerald Long, owner of Long's Sporting Goods and Pawn Shop, testified that he had experience in selling, firing, and repairing Ithaca twelve-gauge pump shotguns.  He testified that, in his opinion, the Ithaca shotgun, in the hands of someone

4

not experienced with it, would go off faster than any other shotgun on the market and is susceptible to accident.

State v. Strickland, 488 S.E.2d 194, 198-99 (N.C. 1997).

A separate capital sentencing proceeding followed Strickland's conviction. At sentencing a single statutory aggravating factor was submitted for the jury's consideration: that Strickland "had been previously convicted of a felony involving the use or threat of violence to the person." N.C. Gen. Stat. § 15A-2000(e)(3). The prosecution supported this factor by presenting evidence of two previous felony convictions. First, Strickland pled guilty in 1985 to one count of assault with a deadly weapon based on an altercation in which he sliced a large knife wound across the back of another man (Todd Kendell). Second, Strickland was indicted for murder based on the 1993 shooting death of Derrick Skipper. A jury convicted Strickland of voluntary manslaughter.

Strickland offered three witnesses in mitigation. First, Dr. Mark Worthen, a psychologist, testified about an interview he conducted with Strickland. In that interview Strickland said that he was drunk at the time he shot Brown, that he intended to scare Brown rather than kill him, and that the gun went off by accident. Strickland also told Dr. Worthen that he was a proud Indian, that he was not crazy, and that he did not want anyone to beg for his life. Second, Grant Davis testified that he was with Strickland at

5

the time of the incident involving Todd Kendell. Though Davis apparently did not see how Kendell was cut, his testimony suggested that Kendell initiated the confrontation with Strickland by, among other things, throwing a piece of cement through the windshield of Strickland's truck. Finally, Strickland called Officer James Clemmons to testify about his investigation into the shooting of Derrick Skipper. Clemmons testified that, according to witnesses, Skipper had a gun in his possession during the incident. Strickland's counsel also attempted to elicit testimony suggesting that Skipper initiated the confrontation, but the court cut off this line of questioning after the prosecution objected on the ground that it required the officer to recount inadmissible hearsay.

Two nonstatutory mitigating factors were submitted to the jury: (1) that Strickland was the father of three children, and (2) that he had great pride in his Native American heritage. The statutory catch-all mitigator for "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value" was also submitted. See N.C. Gen. Stat. § 15A-2000(f)(9). The sentencing jury found the state's requested aggravating circumstance but did not find any circumstances in mitigation. The jury recommended a sentence of death, which the trial judge imposed.

6

Strickland thereafter filed a motion for appropriate relief (MAR) in state court. In his MAR petition Strickland argued, as relevant here, (1) that the prosecution violated its duties under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose pretrial statements made by witness Gail Brown, and (2) that his counsel provided ineffective assistance during the sentencing phase of his case. The MAR court rejected all of Strickland's claims.

Strickland then filed a petition for a writ of habeas corpus in U.S. district court. The district court ultimately denied all the claims for relief in the petition. Strickland appealed, and we granted a certificate of appealability with respect to his Brady claim and the district court's ruling that Strickland had defaulted a portion of his claim for ineffective assistance of counsel by not fairly presenting it to the MAR court.

II.

We first consider Strickland's contention that the prosecution violated its disclosure obligations under Brady v. Maryland. Three elements are necessary for a successful Brady claim: (1) the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State"; and (3) the evidence must be "material," that is, there

7

must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280-82 (1999) (internal quotation marks omitted).

Strickland focuses his Brady claim on the prosecution's failure to disclose a pretrial statement that the victim's wife, Gail Brown, made to Officer Ted Keziah. At trial Mrs. Brown testified that her husband (the victim) and Strickland had been drinking during the evening of the murder but had not been fighting or arguing. Her testimony also indicated that she did not overhear what conversation (if any) the two men had immediately prior to the murder. Strickland's counsel requested that the prosecution disclose any pretrial statements made by Mrs. Brown, but the prosecution claimed that there were none. During post-conviction proceedings, however, the state disclosed evidence of several such pretrial statements, including one made to Keziah. According to Keziah's report, Mrs. Brown told him (Keziah) shortly after the murder that Strickland and the victim had been "running their mouths at one another" prior to the shooting. J.A. 1345. In addition to Keziah's report, Strickland's claim relies on an affidavit from Mrs. Brown, which appears to clarify the meaning of the statement she gave to Keziah. In the affidavit Brown said that about ten minutes before the shooting she heard the two men exchange racial slurs, including "Indian son-of-a-bitch" and

8

"nigger." She also said that she "did not hear everything the two [men] said just before the shooting." J.A. 1490. Because the information contained in the affidavit was not considered by the state MAR court, we must make an independent assessment of the merits of Strickland's <u>Brady</u> claim. <u>See</u> <u>Monroe v. Angelone</u>, 323 F.3d 286, 298-99 (4th Cir. 2003).

We agree with the district court that Strickland's <u>Brady</u> claim lacks merit. Even though Mrs. Brown's statement to Keziah (as supplemented by her affidavit) contradicts the testimony she gave at trial, Strickland is unable to satisfy the third <u>Brady</u> element because he has not established "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Strickler</u>, 527 U.S. at 280. While Mrs. Brown testified at trial that she did not hear racial slurs, her testimony also indicated that she did not overhear everything that transpired in the moments before the shooting. As the district court recognized, Mrs. Brown's affidavit is consistent with her trial testimony in that she expressly says in the affidavit that she did not hear the conversation between the men immediately prior to shooting. Inasmuch as Mrs. Brown did not claim at trial to have overheard the entirety of the men's conversation, the jury had little reason to disbelieve the explanation that Strickland gave to the police shortly after the murder: that he shot the victim in response to the victim calling

9

him a "punk Indian son-of-a-bitch." Because the jury knew about this racial slur from Strickland's confession, it appears quite unlikely that the disclosure of Brown's statement would have altered the jury's decision to convict Strickland of first-degree murder. For these reasons, we agree with the district court that Strickland is not entitled to relief on his Brady claim.

## III.

The second issue before us relates to Strickland's claim that he was denied his Sixth Amendment right to effective assistance of counsel during the sentencing phase of his trial. Strickland has supported this claim by arguing that his counsel should have introduced additional evidence in mitigation, including evidence regarding the circumstances surrounding the Skipper shooting. Specifically, Strickland argues that counsel should have elicited testimony from Doris Perkins Lee, an eyewitness to the shooting, who would have testified that Skipper fired an initial shot at Strickland, hitting him in the thigh. The district court denied several aspects of Strickland's ineffective assistance claim on the merits, but it held that the portion of his claim relating to his counsel's failure to present Lee's testimony was procedurally defaulted because Strickland had not adequately raised it in his MAR petition. We granted a certificate of appealability with respect to "the district court's ruling that [Strickland]'s

10

ineffective assistance claim regarding counsel's failure to present the testimony of Doris Perkins Lee was procedurally defaulted."

Upon full review of the issue, we conclude that Strickland is not entitled to relief on his ineffective assistance claim even assuming that his argument regarding Lee's testimony was properly presented to the state MAR court. Because the record makes clear that Strickland's ineffective assistance claim lacks merit, we need not resolve the procedural default issue. Eaton v. Angelone, 139 F.3d 990, 994 n.1 (4th Cir. 1998).

To succeed on a claim that he received ineffective assistance of counsel at sentencing, Strickland must establish two elements. First, he must show that his counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). Second, he must establish prejudice by showing "a reasonable probability . . . that, but for the deficient performance, he would not have been sentenced to death." Buckner v. Polk, 453 F.3d 195, 201 (4th Cir. 2006). When a petitioner alleges, as Strickland does here, that his counsel should have put forth additional evidence in mitigation, we assess prejudice by "reweigh[ing] the evidence in aggravation against the totality of available mitigating evidence." Wiggins v. Smith, 539 U.S. 510, 534 (2003). Because the state MAR court did not address the merits of Strickland's ineffective assistance claim with respect to his counsel's failure to elicit

11

testimony from Doris Perkins Lee, our review is de novo. See Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999) ("When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo.").

Strickland cannot satisfy the prejudice element, even if his counsel was deficient in failing to present testimony from Doris Lee. After reweighing the totality of the mitigating evidence (including Lee's testimony) against the aggravating evidence, we cannot conclude that there is a reasonable probability that the jury would have returned a sentence other than death. In our view, the addition of Lee's testimony would not have significantly altered the balance of mitigating and aggravating evidence that was presented at sentencing. For instance, while the sentencing jury did not have all the details of the Skipper incident, it did know that Strickland had been convicted only of voluntary manslaughter rather than a more serious charge such as first-degree murder. Indeed, despite hearing testimony from Doris Lee, the earlier jury at the Skipper trial "rejected any theory of self-defense" and found Strickland guilty of voluntary manslaughter. State v. Strickland, 488 S.E.2d at 205. Introducing Lee's testimony before the sentencing jury in Strickland's capital case would likely have prompted the state to introduce rebuttal

12

evidence from the Skipper trial, which "tended to show that [Strickland] . . . shot Mr. Skipper several times, including firing the gun while standing directly over Mr. Skipper after he had fallen in the street." Strickland v. State, 488 S.E.2d at 205. We agree with the district court, which noted when analyzing one of Strickland's related claims, that "evidence that [Skipper,] the victim in the 1993 shooting[,] may have shot at and even wounded [Strickland] would not have mitigated" these more damaging details of Strickland's actions during the Skipper shooting. J.A. 1406.

Moreover, the aggravating evidence against Strickland extended beyond the Skipper incident to his involvement in the wounding of Todd Kendell. Additional evidence regarding the circumstances of the Skipper shooting would not have offset the aggravating effect of the Kendell incident. As the district court explained:

> [S]uch evidence [regarding the circumstances of the Skipper shooting] would have done nothing to mitigate the damaging evidence that the State introduced to prove [Strickland's] other previous felony conviction involving the use or threat of violence - the stabbing of Todd Kendall [sic]. The State's evidence showed that Kendall was unarmed and that [Strickland] attempted to slash Kendall across the stomach with a knife. When Kendall turned and attempted to run, [Strickland] slashed him down the back, opening him from shoulder to belt. Kendall's wife testified that when she saw the wound she was certain her husband was dead and that it took over 800 stitches to repair his back.

J.A. 1406-07.

13

In sum, we cannot conclude that a reasonable probability exists that the sentencing jury would have returned a different sentence if Lee's testimony had been presented. Therefore, Strickland's claim for relief based on ineffective assistance of counsel is without merit.

\* \* \*

For the reasons stated above, the judgment of the district court is

AFFIRMED.